[No. S085736. May 31, 2001.]

MARIANNE SAELZLER, Plaintiff and Appellant, v.
ADVANCED GROUP 400 et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Theodore Wolfberg, Daniel B. Wolfberg, Andrew D. Wolfberg; Law Offices of Michael Paul Thomas and Michael Paul Thomas for Plaintiff and Appellant.

Early, Maslach, Price & Baukol, Early, Maslach, Rudnicki & Rossnagel and Priscilla F. Slocum for Defendants and Respondents.

Greines, Martin, Stein & Richland, Barbara W. Ravitz and Barbara Springer Perry for Building Owners and Managers Association of Greater Los Angeles as Amicus Curiae on behalf of Defendants and Respondents.

Stephan, Oringher, Richman & Theodora, Harry W. R. Chamberlain II, Efrat M. Cogan; Robie & Matthai and Pamela E. Dunn for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendants and Respondents.

Gordon & Rees, Michael T. Lucey and David Collins for Association of Defense Counsel of Northern California and Nevada as Amicus Curiae on behalf of Defendants and Respondents.

Fred J. Hiestand for the Civil Justice Association of California as Amicus Curiae on behalf of Defendants and Respondents.

Horvitz & Levy, Frederic D. Cohen, Andrea M. Gauthier and Orly Degani for the University of Southern California, the University of California, California State University, the Board of Trustees of the Leland Stanford Junior University, California Institute of Technology, Loma Linda University, Pepperdine University, Sutter Health, State Farm General Insurance Company, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company, Civic Property and Casualty Company, Exact Property and Casualty Company and Neighborhood Spirit Property and Casualty Company as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**CHIN, J.**—We granted review in this case to consider important issues concerning the liability of apartment owners and other business enterprises to persons injured on their premises by the criminal acts of others, a liability based solely on the business owners' negligent failure to provide adequate security measures to protect those who enter their property. The difficulty in resolving these issues is enhanced by the need to balance two important and competing policy concerns: society's interest in compensating persons injured by another's negligent acts, and its reluctance to impose unrealistic financial burdens on property owners conducting legitimate business enterprises on their premises.

In this case, we attempt to balance these interests consistent with prior case precedent. As will appear, we conclude (contrary to the Court of Appeal below) that the trial court properly granted summary judgment to defendants based on plaintiff's failure adequately to demonstrate that defendants' negligence was an actual, legal cause of her injuries. Here, plaintiff alleged she was assaulted on defendants' premises by unknown assailants after she

attempted to deliver a package to an apartment resident. Although plaintiff's evidence raised triable issues as to whether defendants owed her a duty of care and breached that duty by failing to provide additional security guards or functioning, locked security gates, her evidence was insufficient to show, as a triable factual issue, that defendants' asserted breach of duty actually caused her injuries. Plaintiff acknowledges that her assailants were never apprehended and their identity remains unknown to her. Accordingly, she is unable to prove they would not have succeeded in assaulting her if defendants had provided additional security precautions.

## STANDARD OF REVIEW

Because plaintiff appeals from an order granting defendants summary judgment, we must independently examine the record to determine whether triable issues of material fact exist. (Code Civ. Proc., § 437c, subd. (c); see *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334 [100 Cal.Rptr.2d 352, 8 P.3d 1089] (*Guz*); *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181, 1188 [91 Cal.Rptr.2d 35, 989 P.2d 121] (*Sharon P.*); *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673-674 [25 Cal.Rptr.2d 137, 863 P.2d 207] (*Ann M.*).) We stated in *Sharon P.,* involving a similar negligence claim resolved on summary judgment, that "To prevail on her action in negligence, plaintiff must show that defendants owed her a legal duty, that they breached the duty, and that the breach was a proximate or legal cause of her injuries. (*Ann M., supra,* 6 Cal.4th at p. 673.) Since defendants obtained summary judgment in their favor, 'we review the record de novo to determine whether [they have] conclusively negated a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial.' (*Id.* at pp. 673-674.)" (*Sharon P., supra,* 21 Cal.4th at p. 1188.)

We recently observed in *Guz* that amendments to the California summary judgment statute may have modified the foregoing traditional rule by clarifying that "a moving defendant could obtain summary judgment solely by showing after opportunity for discovery, that the *opposing plaintiff* had *failed to present* triable evidence crucial to his case [citation]." (*Guz, supra,* 24 Cal.4th at p. 335, fn. 7; see also *id.* at pp. 372-374 (conc. opn. of Chin, J.); Code Civ. Proc., § 437c, subd. (*o*)(2) [if defendant shows element of plaintiff's case cannot be established, burden shifts to plaintiff to show triable issue of fact, a showing supported by "specific facts," not mere "allegations or denials of its pleadings"]; *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 482 [50 Cal.Rptr.2d 785] (*Leslie G.*).)

We agree that the amendments to Code of Civil Procedure section 437c have modified the rule recited in *Sharon P.* As stated in *Scheiding v.*

*Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 70 [81 Cal.Rptr.2d 360] (*Scheiding*), "We begin by observing that the nature of summary judgment in California has changed dramatically over the last 10 years. The shifting of the burden of producing evidence that lies at the heart of this appeal could not have occurred under the summary judgment law as it previously existed. *Formerly, a moving defendant had to affirmatively negate a cause of action and could not attempt to rely on a plaintiff's vague or otherwise insufficient responses to discovery.* Prior to the amendments of section 437c, the burden of proof rested entirely on the moving party to establish a right to summary judgment by demonstrating the negative proposition that the opposing party could not prevail. [Citations.] In most cases, this was a burden impossible to bear." (Italics added.)

*Scheiding* continued, pointing out that "The 1992 and 1993 amendments . . . did not change the fundamental requirement that the moving party prove its right to summary judgment, but did adopt the federal mechanism of burden shifting. The new statute expressly provided that *the burden does not shift to a responding party until the moving party (in this context, as usual, a defendant or cross-defendant) has been able to 'show' that a cause of action has no merit 'because an element of the claim cannot be established or there is a complete defense.'* Thus, the amended language of [Code of Civil Procedure] section 437c, like its counterpart Federal Rules of Civil Procedure, rule 56 (28 U.S.C.), now places the initial burden on the moving party, and shifts it to the opposing party upon a 'showing' that one or more elements of the cause of action cannot be established. [Citation.]" (*Scheiding, supra,* 69 Cal.App.4th at pp. 71-72, italics added; see also *Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 581-592 [37 Cal.Rptr.2d 653] [legislative history of 1992 and 1993 amendments].)

Therefore, we must determine whether defendants in the present case have shown, through the evidence adduced in this case, including security records and deposition testimony, that plaintiff Saelzler has not established, and cannot reasonably expect to establish, a prima facie case of causation, a showing that would forecast the inevitability of a nonsuit in defendants' favor. If so, then under such circumstances the trial court was well justified in awarding summary judgment to avoid a useless trial. (See *Guz, supra,* 24 Cal.4th at p. 374 (conc. opn. of Chin, J.).)

■ In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46]), liberally construing her evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor. (*Marshak v. Ballesteros* (1999) 72 Cal.App.4th 1514, 1517 [86

Cal.Rptr.2d 1]; *Kaplan v. LaBarbera* (1997) 58 Cal.App.4th 175, 179 [67 Cal.Rptr.2d 903].) We have concluded that, even giving plaintiff the benefit of these favorable rules of construction, her submission in opposition to summary judgment lacked specific facts showing that defendants' alleged negligence was an actual, legal cause of her injuries. In other words, defendants have shown that plaintiff has not established, and cannot reasonably expect to establish, a prima facie case of causation.

### FACTS

On March 15, 1996, plaintiff Marianne Saelzler was an employee of Federal Express. Defendants were owners of the Sherwood Apartments, a 28-building, 300-unit apartment complex located on a several-acre site in Bellflower. Plaintiff came to the complex in midafternoon to deliver a package to a resident. As she entered through one of the many gated entrances to the premises, she saw two young men loitering outside a security gate that had been propped open. While walking across the grounds she saw another young man already on the premises.

Plaintiff's attempt to deliver the package proved unsuccessful because the resident was not at home. When plaintiff returned down a walk path with the package in hand, the three men confronted her, and one of them asked, "Where do you think you're going?" When she failed to reply, another one said, "You're not going anywhere." Then the three of them beat her and attempted to rape her, inflicting serious injuries. After assaulting plaintiff, her assailants fled and were never apprehended.

Plaintiff's complaint alleged that defendants, knowing that dangerous persons frequented their premises, nonetheless failed to maintain the premises in a safe condition, failed to provide adequate security, and failed to warn others of the unsafe conditions. Defendants moved for summary judgment on the basis that plaintiff was unable to establish any substantial causal link between defendants' omissions and plaintiff's injury. Plaintiff offered no evidence showing the identity of her assailants, whether they were gang members, whether they trespassed on defendants' property to assault her, or whether they were tenants of the building who were permitted to pass through the security gates. Similarly, plaintiff submitted no evidence showing that the propped-open security gate was actually broken or otherwise not functioning properly, or whether her assailants entered through the gate or themselves broke it and entered. Finally, plaintiff offered no evidence that defendants reasonably or effectively could have warned members of the public such as plaintiff of unspecified dangers from unknown assailants frequenting the area.

As the trial court found, plaintiff presented evidence that defendants knew of frequent recurring criminal activity on the premises of their 28-building apartment complex. The community of Bellflower was itself a high-crime area, with considerable juvenile gang activity occurring both on and off defendants' premises. Plaintiff provided police reports and security logs showing that within the year prior to her assault, defendants received 41 reports of trespass, and 45 reports of occasions in which various perimeter fences and gate doors were broken or rendered inoperable. The list of criminal activity on the premises included incidents of gunshots, robberies, and sexual harassment of women, including sexual assaults and rapes.

Defendants' security manager acknowledged that during the year preceding the assault on plaintiff, several nighttime assaults, and actual or attempted rapes, occurred on the premises. Plaintiff produced evidence that a gang called the 706 Hustlers was reportedly "headquartered" in one of defendants' apartment buildings, conducting drug transactions, and hitting and intimidating other people on the premises. In the year prior to the incident involving plaintiff, sheriff's officers came to the Sherwood Apartments approximately 50 times. Much of this criminal activity was reported to defendants' manager, either in daily incident reports from their nighttime security officers or in police reports. Some pizza parlors refused to deliver to apartments in the complex, insisting residents come to the sidewalk if they wanted delivery of pizzas ordered by phone. Defendants' apartment manager used security personnel to escort her to her vehicle whenever she left the premises.

On the other hand, defendants' security logs showed that they took some steps to control the situation, hiring security guards to patrol the premises *at night,* and making frequent and regular attempts to repair broken locks or nonfunctioning gates. The record indicates that these guards were on daily duty from approximately 5:00 p.m. to 5:00 a.m. Defendants' manager stated that the guards' starting times ranged from 3:00 p.m. to 5:00 p.m., to make their schedule less predictable, and that defendants occasionally, on a random basis, employed full-time 24-hour security patrols on the premises. Defendants imposed a nighttime curfew on juveniles, and posted notices threatening eviction of tenants involved with drugs or gang activities. Defendants' security logs indicated their manager and security guards regularly checked access gates for forced entry and broken locks, broke up fights, forced aggressive tenants or trespassers to leave the area, and evicted tenants involved in criminal or gang activity.

Plaintiff observes that police officers advised both defendants' apartment manager and the head of the security firm they employed that they should

hire *daytime* as well as nighttime security patrols. Plaintiff filed a lengthy declaration from a security expert, Robert Feliciano, who had reviewed the security logs and depositions and had personally visited the Sherwood Apartments complex. His qualifications included service as Director of Police and Safety for the Housing Authority of Los Angeles County, as well as advanced education in public safety and several years in law enforcement. At the time he made his declaration, he was a full-time instructor in criminal justice and police science at a community college. Feliciano expressed the opinion "that this attack, assault and battery, and attempted rape on the plaintiff would not have occurred had there been daytime security and a more concerted effort to keep the gates repaired and closed. . . . It is my opinion that the premises were a haven for gangsters and hoodlums which further encouraged criminal activity as evidence [*sic*] by the long history of criminal activity in the only one year prior to this incident."

The trial court granted summary judgment for defendants, finding plaintiff had failed to show defendants' breach of duty to safeguard her was a proximate cause of her assault. Based on the parties' submissions, the court found "overwhelming evidence" of prior incidents of trespass and broken or inoperable perimeter fences or gates, and a "long list" of criminal activity on the premises, including a juvenile gang possibly "headquartered" there. But despite establishing the "high foreseeability" that violent crime would occur on the premises, and defendants' resultant duty to provide increased security, the court found that plaintiff failed to establish a "reasonably probable causal connection" between defendants' breach of duty and plaintiff's injuries.

A majority of the Court of Appeal reversed, concluding that plaintiff's showing was sufficient to raise a triable causation issue for the jury. In summary, the majority held, relying primarily on commonsense and ordinary experience, that defendants' "complete absence of required security measures" by itself reasonably could be deemed a contributing cause of any criminal activity in the area.

The Court of Appeal majority also held that defendants' failure to provide additional security justified shifting the burden of proof to defendants, for purposes of their summary judgment motion, to conclusively establish the absence of a causal relation between their breach of duty and the assault on plaintiff by showing this particular assault would have occurred even if reasonable security measures had been taken. Because defendants "created this situation" by their flagrant failure to provide any additional daytime security, plaintiff should be relieved of her responsibility to prove a causal link between defendants' breach of duty and the assault which produced her injuries.

Finally, according to the Court of Appeal majority, the testimony of plaintiff's expert, opining that the assault on plaintiff would not have occurred but for the lack of daytime security measures, was "both admissible and credible" on the causation issue.

The Court of Appeal dissent reasoned that although security measures such as guards, lights, or gates may lessen the general probability of crime occurring on the premises, plaintiff presented no evidence that such measures would have succeeded in thwarting her assailants. The dissent observed that "Neither appellant nor anyone else knows who the attackers were; they may have lived in the complex and possessed keys to the gate. Even if the attackers were nonresidents, a functioning gate would not necessarily have kept them out. The attackers might have followed [plaintiff] or some other tenant in while the gate was open, or climbed over the gate. The complex had numerous auto and pedestrian entrances through which the attackers might have come.

"Likewise, it cannot be known whether more security guards would have prevented the attack. A 300-unit, 28-building apartment complex contains many rooms, halls, entries, garages and other spaces where a rape could take place despite extensive security patrols. Again, though one can generalize that increased security patrols probably would have lessened the incidence of crime in the complex, we can never know whether they would have prevented the attack on appellant. The security officer's logs in evidence did show that there were regular security patrols on the premises, and despite these, the attack on [plaintiff], and other crimes as well, occurred."

## DISCUSSION

■ As indicated, in this case plaintiff, injured on defendants' premises by the criminal assault of unknown assailants, seeks to recover damages from defendants on the theory that they breached their duty of care toward her. In a recent case, we explained that to prevail in such a case, the plaintiff must show that the defendant owed her a legal duty of care, the defendant breached that duty, *and the breach was a proximate or legal cause of her injury*. (*Sharon P., supra*, 21 Cal.4th at p. 1188; accord, *Ann M., supra*, 6 Cal.4th at p. 673; see Rest.2d Torts, § 281.) Although plaintiff devotes a substantial portion of her brief to the issue of defendants' *duty of care*, defendants do not contest, for purposes of their summary judgment motion, that they may have owed and breached a duty of care toward plaintiff. Here, we are solely concerned with the issue of *causation*. Was defendants' possible breach of duty a substantial factor in causing plaintiff's injuries?

In *Sharon P.*, the plaintiff was criminally assaulted by unknown assailants in an underground parking garage. She sued the garage owner for failure to

provide adequate security measures for its tenants and, as here, the trial court granted summary judgment against her. Although in *Sharon P.* we were concerned with the question of the defendants' duty to provide security guards and other security measures, we also spoke briefly on the separate subject of causation, observing that it was "questionable whether plaintiff's proposed [security] measures would have been effective to protect against the type of violent assault that occurred here." (*Sharon P., supra,* 21 Cal.4th at p. 1196.) We noted that the courts "have rejected claims of abstract negligence pertaining to the lighting and maintenance of property *where no connection to the alleged injuries was shown.* [Citations.]" (*Id.* at pp. 1196-1197, fn. omitted, italics added.)

In *Sharon P., supra,* 21 Cal.4th at page 1197, we cited with approval three Court of Appeal cases holding that, assuming the defendant owed and breached a duty of care to the plaintiff, she nonetheless cannot prevail unless she shows the breach bore a causal connection to her injury. (*Nola M. v. University of Southern California* (1993) 16 Cal.App.4th 421, 435-439 [20 Cal.Rptr.2d 97] (*Nola M.*); *Constance B. v. State of California* (1986) 178 Cal.App.3d 200, 211-212 [223 Cal.Rptr. 645] (*Constance B.*); *Noble v. Los Angeles Dodgers, Inc.* (1985) 168 Cal.App.3d 912, 915-918 [214 Cal.Rptr. 395] (*Noble*).) These cases are close on point and their analyses are instructive.

In *Noble*, the plaintiff was assaulted in a parking lot at Dodger Stadium and sued the stadium owner on the theory it failed to provide adequate security for its patrons. At trial, the plaintiff's expert witness opined that the owner should have employed more security guards to patrol the area, and the jury awarded the plaintiff substantial damages. On appeal, the court reversed, holding that "abstract negligence," without proof of a causal connection between the defendant's breach and the plaintiff's injury, is insufficient to sustain the award. (*Noble, supra,* 168 Cal.App.3d at pp. 916, 918.)

In *Constance B.*, the plaintiff was assaulted at night in the restroom at a state highway rest area. The appellate court affirmed a grant of summary judgment in defendant state's favor, holding that the plaintiff, who saw her attacker watching her when she entered the restroom, failed to submit evidence showing that additional lighting would have prevented the attack. (*Constance B., supra,* 178 Cal.App.3d at pp. 211-212.) The court observed that "If liability may be premised solely on this notion [that criminals are generally deterred by strong lighting], proprietors will become the insurers of the safety of persons on their premises, subject only to the caprice of particular juries. [Citation.]" (*Id.* at p. 212.)

In *Nola M.*, the plaintiff was raped on a college campus and sued the college on the theory it should have provided more campus security. On

appeal from a judgment in the plaintiff's favor, the *Nola M.* court reversed. The court assumed for purposes of argument that the plaintiff had submitted sufficient evidence that the defendant breached a duty of care toward her, but concluded that she failed to prove the breach was a legal cause of the assault. (*Nola M., supra,* 16 Cal.App.4th at pp. 427-428.) The court observed that to demonstrate actual or legal causation, the plaintiff must show that the defendant's act or omission was a "substantial factor" in bringing about the injury. (*Id.* at p. 427; see *Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1049, 1052-1054 [1 Cal.Rptr.2d 913, 819 P.2d 872]; Rest.2d Torts, §§ 430, 431, subd. (a).) *Nola M.* concluded that the plaintiff must do more than simply criticize, through the speculative testimony of supposed security "experts," the extent and worth of the defendant's security measures, and instead must show the injury was actually caused by the failure to provide greater measures. (*Nola M., supra,* 16 Cal.App.4th at p. 435.) The court observed that a different rule would "make the landowner the insurer of the absolute safety of everyone who enters the premises." (*Id.* at p. 437.)

In addition to the foregoing three appellate cases cited in our *Sharon P.* decision, other California cases support the rule that the plaintiff must establish, by nonspeculative evidence, some actual causal link between the plaintiff's injury and the defendant's failure to provide adequate security measures. (See *Leslie G., supra,* 43 Cal.App.4th at pp. 480-488; *Thai v. Stang* (1989) 214 Cal.App.3d 1264, 1276 [263 Cal.Rptr. 202] [characterizing as "pure speculation" expert testimony that absence of added security contributed to criminal assault]; *Lopez v. McDonald's Corp.* (1987) 193 Cal.App.3d 495, 515 [238 Cal.Rptr. 436] [restaurant's failure to hire security guard not shown to have been "substantial factor" in causing injuries from gunman's attack].)

Although each of the foregoing cases supports defendants' position here, *Leslie G.* is perhaps closest on point, being an appeal following summary judgment for the defendant. There, the plaintiff alleged she was raped by an unknown assailant while in the garage of her apartment building. She sued the building owners, asserting their negligence in *failing to repair a broken security gate* might have allowed her assailant to enter the garage. As in the present case, the plaintiff's security expert testified at his deposition that the apartment was located in a high-crime area, that functioning security gates were critical to ensuring tenants' safety, and that the nonfunctioning gates allowed the assailant to enter and ultimately assault the plaintiff. The expert stated his opinion that the defendant should have hired an on-site manager to perform regular inspections and repairs of the gate and other entrances, to ensure the building's continued safety. He also opined that the assailant had selected the garage because of its isolated, remote nature, and the opportunities to hide and escape if necessary. (*Leslie G., supra,* 43 Cal.App.4th at pp. 478-479.)

In *Leslie G.,* as here, the trial court granted the defendant summary judgment on the ground the plaintiff had failed to establish a sufficient causal connection between the defendant's negligence and the assault. Unlike the present case, in *Leslie G.* the Court of Appeal affirmed summary judgment, holding that the security expert's opinions were too speculative to furnish a causal link between the defendant's negligence and the assault. The court also observed that "Since there is no direct evidence that the rapist entered or departed through the broken gate (or even that the broken gate was the only way he could have entered or departed), [plaintiff] cannot survive summary judgment simply because it is *possible* that he *might* have entered through the broken gate. [Citations.]" (*Leslie G., supra,* 43 Cal.App.4th at p. 483.)

As here, the plaintiff in *Leslie G.* had argued that her expert's opinion testimony was sufficient to create a triable issue of fact regarding causation. The court disagreed, observing that expert opinion resting solely on speculation and surmise is inadequate to survive summary judgment because it fails to establish a " 'reasonably probable causal connection' " between the defendant's negligence and the plaintiff's injury. (*Leslie G., supra,* 43 Cal.App.4th at p. 487, quoting from an earlier case, italics omitted.) The court concluded that "a tenant's negligence action against her landlord for injuries resulting from the criminal assault of a third person must be supported by evidence establishing that it was *more probable than not* that, but for the landlord's negligence, the assault would not have occurred. Where, as here, there is evidence that the assault could have occurred even in the absence of the landlord's negligence, proof of causation cannot be based on mere speculation, conjecture and inferences drawn from other inferences to reach a conclusion unsupported by any real evidence, or on an expert's opinion based on inferences, speculation and conjecture. [¶] In this case, where there is no factual basis for the expert's opinion or for [the plaintiff's] general assertion of causation, the conclusion is unavoidable that summary judgment was properly granted." (*Id.* at p. 488, italics added, fn. omitted.)

*Leslie G.* and the other cases cited above fully support the trial court's summary judgment ruling in this case. Here, by reason of the prior criminal assaults and incidents on the premises, defendants may have owed a duty to provide a reasonable degree of security to persons entering them. For purposes of discussion, we assume defendants breached that duty by failing (1) to keep all entrance gates locked and functioning, and (2) to provide additional daytime security guards to protect persons such as plaintiff. But the evidence fails to show that either breach contributed to plaintiff's injuries in this case. ■ As Professors Prosser and Keeton observe, "A mere possibility of such causation is not enough; and when the matter remains one

of pure speculation or conjecture, or the probabilities are at best evenly balanced, *it becomes the duty of the court to direct a verdict for the defendant.*" (Prosser & Keeton, Torts (5th ed. 1984) § 41, p. 269, fns. omitted, italics added.)

 Plaintiff admits she cannot prove the identity or background of her assailants. They might have been unauthorized trespassers, but they also could have been tenants of defendants' apartment complex, who were authorized and empowered to enter the locked security gates and remain on the premises. The primary reason for having functioning security gates and guards stationed at every entrance would be to exclude *unauthorized* persons and trespassers from entering. But plaintiff has not shown that her assailants were indeed unauthorized to enter. Given the substantial number of incidents and disturbances involving defendants' own tenants, and defendants' manager's statement that a juvenile gang was "headquartered" in one of the buildings, the assault on plaintiff could well have been made by tenants having authority to enter and remain on the premises. That being so, and despite the speculative opinion of plaintiff's expert, she cannot show that defendants' failure to provide increased daytime security at each entrance gate or functioning locked gates was a substantial factor in causing her injuries. (See *Nola M., supra,* 16 Cal.App.4th at p. 427; *Mitchell v. Gonzales, supra,* 54 Cal.3d at pp. 1049, 1052-1054; Rest.2d Torts, § 431, subd. (a).) Put another way, she is unable to prove it was "more probable than not" that additional security precautions would have prevented the attack. (*Leslie G., supra,* 43 Cal.App.4th at p. 488; see Prosser & Keeton, Torts, *supra,* § 41, p. 269 [plaintiff must show it more likely than not defendant's conduct was cause in fact of the result; "mere possibility of such causation is not enough"]; Rest.2d Torts, § 433B, com. a, p. 442.)

This case differs substantially from *Rosh v. Cave Imaging Systems, Inc.* (1994) 26 Cal.App.4th 1225 [32 Cal.Rptr.2d 136], on which plaintiff relies. There, the plaintiff was shot and severely injured by a disgruntled former employee, Hua, who had recently been terminated from employment. The plaintiff sued the security firm that was hired specifically to protect the plaintiff and other employees from such incidents. The evidence showed that the defendant had repeatedly ignored the plaintiff's directions to bar Hua from entering the premises. Under such circumstances, the *Rosh* court properly found that the defendant's negligence was a "substantial factor" in facilitating Hua's attack on the plaintiff. (*Id.* at p. 1236.) Unlike the situation in *Rosh,* defendants in the present case had no "advance notice that a particular assailant was on the premises." (*Id.* at p. 1238.)

Plaintiff, citing her expert's declaration, opines that her injuries could have been avoided if defendants had hired roving security guards to patrol

the entire premises during the day as well as at night. Aside from the inordinate expense of providing such security for a 28-building apartment complex, the argument is entirely speculative, as assaults and other crimes can occur despite the maintenance of the highest level of security. (See *Sharon P., supra*, 21 Cal.4th at p. 1196; *Nola M., supra*, 16 Cal.App.4th at pp. 430, 435-436; *Noble, supra*, 168 Cal.App.3d at p. 918 ["No one can reasonably contend that even a significant increase in police personnel will prevent all crime or any particular crime"].) As previously noted, "proof of causation cannot be based on . . . an expert's opinion based on inferences, speculation and conjecture." (*Leslie G., supra*, 43 Cal.App.4th at p. 488; see *Nola M., supra*, 16 Cal.App.4th at p. 435.) Despite her expert's speculation, plaintiff cannot show that roving guards would have encountered her assailants or prevented the attack. As the dissenting Court of Appeal justice in this case observed, "A 300-unit, 28-building apartment complex contains many rooms, halls, entries, garages, and other spaces where a rape could take place despite extensive security patrols."

Finally, as *Nola M.* asks, "where do we draw the line? How many guards are enough? Ten? Twenty? Two hundred? . . . To characterize a landowner's failure to deter the wanton, mindless acts of violence of a third person as the 'cause' of the victim's injuries is (on these facts) to make the landowner the insurer of the absolute safety of everyone who enters the premises." (*Nola M., supra*, 16 Cal.App.4th at p. 437; see also *7735 Hollywood Blvd. Venture v. Superior Court* (1981) 116 Cal.App.3d 901, 905 [172 Cal.Rptr. 528].) Moreover, as the Court of Appeal dissent in the present case observed, the ultimate costs of imposing liability for failure to provide sufficient daytime security to prevent assaults would be passed on to the tenants of low-cost housing in the form of increased rents, adding to the financial burden on poor renters.

Plaintiff argues that a footnote in an earlier case supports her argument that the trial court's findings of the *foreseeability* of plaintiff's injury necessarily also establishes the element of *causation*. (See *Isaacs v. Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 131, fn. 8 [211 Cal.Rptr. 356, 695 P.2d 653] [affirmative finding on foreseeability issue would establish close connection between defendant's conduct and injury suffered].) But in the present case, the trial court's foreseeability finding was only that, given the high-crime area and history of incidents, defendants could *generally* foresee that criminal assaults of some kind might occur on the premises. The court did not find that defendants' failure to provide increased security despite the foreseeability of assaults actually caused plaintiff's injuries. Indeed, the court specially found that plaintiff did not prove any such causal link.

The *Isaacs* footnote was written in the context of an assault occurring in a dark, isolated parking lot lacking security guards or proper lighting, under

circumstances in which the defendant could clearly foresee that its omissions would contribute to the very assault which occurred there. We did not intend to suggest in *Isaacs* that a general finding of the foreseeability of some kind of future injury or assault on the premises inevitably establishes that the defendant's omission caused plaintiff's own injuries. Actual causation is an entirely separate and independent element of the tort of negligence. (See *Sharon P., supra*, 21 Cal.4th at p. 1188; *Nola M., supra*, 16 Cal.App.4th at p. 428, fn. 5 [referring to *Isaacs's* "rather astonishing proposition" that finding of foreseeability would include finding of causation]; *Noble, supra*, 168 Cal.App.3d at pp. 915-916 [noting *Isaacs's* "enigmatic reference" to causation].)

Plaintiff also argues in favor of the Court of Appeal majority's practical approach to the causation issue. As previously noted, the majority held that common sense and common experience should lead us to conclude that a defendant's "complete absence of required security measures" is necessarily a "contributing cause of most crimes occurring on that property." Defendants observe, of course, that the evidence fails to show any such complete absence of security, as defendants provided, among other things, nighttime roving security patrols and regular daytime inspections to repair broken gates.

More fundamentally, we hesitate to adopt a rule of common sense that seemingly would prevent summary judgment on the causation issue *in every case* in which the defendant failed to adopt increased security measures of some kind. *Nola M.* observes that "it would be grossly unfair to permit a lay jury, after the fact, to determine in any case that security measures were 'inadequate,' particularly in light of the fact that the decision would always be rendered in a case where the security had, in fact, proved inadequate . . . ." (*Nola M., supra*, 16 Cal.App.4th at p. 429.) Similarly, in *Sharon P., supra*, 21 Cal.4th at page 1194, we quoted with approval a legal commentator's observation that if we simply relied on hindsight, the mere fact that a crime has occurred could always support the conclusion that the premises were inherently dangerous.

*Leslie G.* and *Nola M.* explain that, to demonstrate actual or legal causation, the plaintiff must show that the defendant's act or omission was a "substantial factor" in bringing about the injury. (*Leslie G., supra*, 43 Cal.App.4th at p. 481; *Nola M., supra*, 16 Cal.App.4th at p. 427; see *Mitchell v. Gonzales, supra*, 54 Cal.3d at pp. 1049, 1052-1054; Rest.2d Torts, §§ 430-431.) In other words, plaintiff must show some substantial link or nexus between omission and injury. Under the Court of Appeal's "common sense" rule, the defendants' omission itself would constitute the missing link.

Plaintiff overstates her case when she contends that adopting the "substantial factor" approach to the causation issue would make it virtually impossible to recover from landlords or other property owners for negligence in failing to take reasonable protective measures to safeguard others from the criminal assaults of third persons. Plaintiff asserts that a finding of causation would be justified "only if a criminal is caught, and then only if the criminal testifies what specific lack of deterrence on the property made easier his or her opportunity to commit the crime . . . ." We disagree, for we can readily hypothesize cases in which the evidence discloses an actual and substantial causal link between the criminal assault and the defendant's negligence.

Thus, in a given case, direct or circumstantial evidence may show the assailant took advantage of the defendant's lapse (such as a failure to keep a security gate in repair) in the course of committing his attack, and that the omission was a substantial factor in causing the injury. Eyewitnesses, security cameras, even fingerprints or recent signs of break-in or unauthorized entry, may show what likely transpired at the scene. In the present case no such evidence was presented, but the circumstances in other cases may well be different. (See *Leslie G., supra,* 43 Cal.App.4th at p. 488, fn. 8; *Rosh v. Cave Imaging Systems, Inc., supra,* 26 Cal.App.4th at p. 1238 [defendant failed to act despite actual notice that particular dangerous assailant was on the premises]; *Nola M., supra,* 16 Cal.App.4th at pp. 436-437.)

*Nola M.* lucidly explained that "We think it comes down to this: When an injury can be prevented by a lock or a fence or a chain across a driveway or some other physical device, a landowner's failure to erect an appropriate barrier can be the legal cause of an injury inflicted by the negligent or criminal act of a third person. [Citations.] But where, as here, we are presented with an open area which could be fully protected, if at all, only by a Berlin Wall, we do not believe a landowner is the cause of a physical assault it could not reasonably have prevented. (*Noble* v. *Los Angeles Dodgers, Inc., supra,* 168 Cal.App.3d at p. 918 ['No one can reasonably contend that even a significant increase in police personnel will prevent all crime or any particular crime'].)" (*Nola M., supra,* 16 Cal.App.4th at pp. 436-437.) Or as *Leslie G.* succinctly observed, if the plaintiff in that case could have proved her rape could have been prevented by a working security gate, "we wouldn't be having this discussion." (*Leslie G., supra,* 43 Cal.App.4th at p. 485, fn. 5.)

Plaintiff also urges us to adopt the Court of Appeal's novel approach of shifting the proof burden on the causation issue to defendants. As previously noted, the Court of Appeal majority held that defendants' flagrant failure to provide daytime security justified shifting the burden of proof to defendants

to conclusively establish the absence of a causal relation between its breach of duty and the assault on plaintiff; by showing this particular assault would have occurred even if reasonable security measures had been taken.

We think such a drastic shifting of the proof burden is unjustified by either the evidence in this case or prior statutory and case law. First, and contrary to the Court of Appeal's hyperbole, the evidence discloses no flagrant failure in this case. As we have seen, most of the assaults and similar incidents of crime plaintiff has cited occurred during the night, and the record indicates defendants did provide extensive nighttime security. Moreover, plaintiff's own evidence showed that defendants at least attempted to keep all security gates in working order, performing regular inspections and repairs.

But again, even assuming a triable issue existed regarding the extent or reasonableness of defendants' security efforts, even a flagrant failure to provide such measures would not justify shifting to defendants the burden of conclusively proving the absence of causation. No matter how inexcusable a defendant's act or omission might appear, the plaintiff must nonetheless show the act or omission caused, or substantially contributed to, her injury. Otherwise, defendants might be held liable for conduct which actually caused no harm, contrary to the recognized policy against making landowners the *insurer* of the absolute safety of anyone entering their premises. (See *Sharon P., supra,* 21 Cal.4th at p. 1195; *Ann M., supra,* 6 Cal.4th at p. 679; *Nola M., supra,* 16 Cal.App.4th at p. 437.)

Indeed, the Court of Appeal's burden-shifting approach seems directly contrary to the state's summary judgment statute, which provides that a defendant meets its burden of showing that a cause of action has no merit "if that party has shown that one or more elements of the cause of action . . . cannot be established . . . ." Once the defendant meets the foregoing burden, "the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action . . . [and] set forth the specific facts showing that a triable issue of material fact exists as to that cause of action . . . ." (Code Civ. Proc., § 437c, subd. (*o*)(2).) As stated in *Leslie G., supra,* 43 Cal.App.4th at page 482, "Under the current version of the summary judgment statute, a moving defendant need not support his motion with affirmative evidence negating an essential element of the responding party's case. Instead, the moving defendant may . . . point to *the absence of evidence to support the plaintiff's case.* When that is done, the burden shifts to the plaintiff to present evidence showing there is a triable issue of material fact. If the plaintiff is unable to meet her burden of proof regarding an essential element of her case, all other facts are

rendered immaterial. [Citations.]" (See also *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 968-969 [67 Cal.Rptr.2d 16, 941 P.2d 1203].)

█ In short, plaintiff cannot prove that defendants' omissions were a substantial factor in causing her injuries, and no proper basis exists for shifting the burden of proof on that issue to defendants. Plaintiff has had ample opportunity, through pretrial discovery, to marshal evidence showing that defendants' asserted breach of duty actually caused her injuries. The evidence at hand, however, merely shows the speculative possibility that additional daytime security guards and/or functioning security gates might have prevented the assault. Plaintiff's evidence is no less speculative because she offered a security expert's testimony. Because he was equally unaware of the assailants' identities, his opinion regarding causation is simply too tenuous to create a triable issue whether the absence of security guards or functioning gates was a substantial factor in plaintiff's assault.

The judgment of the Court of Appeal is reversed with directions to affirm the award of summary judgment in defendants' favor.

George, C. J., Baxter, J., and Brown, J., concurred.

**KENNARD, J.,** Dissenting.—The majority upholds the trial court's grant of summary judgment to defendants, at whose apartment complex plaintiff, a Federal Express employee who was trying to deliver a package, suffered a brutal sexual assault by three men who were never apprehended. Only by bending both the rules of summary judgment and the legal causation element of negligence can the majority reach its result. The holding places a virtually insurmountable barrier in the path of any plaintiff seeking to recover damages for injuries allegedly suffered as a result of a property owner's unreasonable failure to provide security to protect against foreseeable third party criminal acts. I cannot and do not join in that holding.

I

After the sexual attack described above, plaintiff sued defendants, seeking damages for personal injury. She alleged that defendants knew of dangerous persons frequenting their property, yet failed to maintain the premises in a safe condition, failed to provide adequate security, and failed to warn of unsafe conditions.

Defendants moved for summary judgment, asserting that plaintiff could not show that they had caused her injuries. In opposition, plaintiff presented the following evidence: Pizza parlors refused to deliver to the apartment

complex. Defendants' own apartment manager relied on security personnel to escort her to her car whenever she left the property. During the year before the attack on plaintiff, security personnel reported to the building's management 45 instances of broken fences or gates and 41 trespass incidents, and police responded to the complex some 50 times. Criminal activities on the property included gunfire, robberies, rapes, and other sexual assaults. The premises were the headquarters for the 706 Hustlers, a gang that conducted drug transactions and assaulted and threatened others on the property. Although security guards patrolled the complex at night, defendants provided none during the day even though the police had suggested that they do so.

After reviewing defendants' security logs and depositions and visiting the complex, plaintiff's security expert concluded that the attack would have been prevented had defendants provided daytime security at the complex.

The trial court found "overwhelming evidence" of recurring criminal activities on defendants' property, making it highly foreseeable that violent crime would occur on the property. The court nevertheless felt compelled to grant defendants' motion: "The Court notes that the facts of this case are particularly troubling and may warrant the Court of Appeal reviewing the status of the law as it relates to the Nola M. [v. *University of Southern California* (1993) 16 Cal.App.4th 421 [20 Cal.Rptr.2d 97]] and Leslie G. [v. *Perry & Associates* (1996) 43 Cal.App.4th 472 [50 Cal.Rptr.2d 785]] cases which seem to compel the ruling set forth above." Both cases hold that a plaintiff seeking to establish that a property owner's failure to provide security is the cause of a criminal assault by a third party must show the security would have prevented the assault. (*Nola M. v. University of Southern California, supra,* at pp. 436-437 & fn. 10; *Leslie G. v. Perry & Associates, supra,* at p. 488.)

The Court of Appeal in a split decision reversed the summary judgment in favor of defendants. We granted defendants' petition for review. Today, a majority of this court in turn reverses the Court of Appeal's judgment.

## II

The majority concludes that plaintiff cannot show a causal connection between her injuries and defendants' breach of the duty of reasonable care they owed plaintiff unless she establishes that her assailants "would not have succeeded in assaulting her if defendants had provided additional security precautions" (maj. opn., *ante,* at p. 767) or, stated differently, "that roving guards would have encountered her assailants or prevented the attack" (*id.* at

p. 777). In essence, the majority imposes on plaintiff the burden of showing causation with certainty. This is wrong.

Even at trial, a plaintiff need not establish causation with certainty. (*Valdez v. J. D. Diffenbaugh Co.* (1975) 51 Cal.App.3d 494, 509 [124 Cal.Rptr. 467]; *Ahrentzen v. Westburg* (1968) 263 Cal.App.2d 749, 751 [69 Cal.Rptr. 916].) As Dean Prosser explained more than half a century ago: "In the ordinary case the question becomes one of what would have happened if the defendant had acted otherwise. This is of course incapable of mathematical proof, and a certain element of guesswork is always involved. Proof of the relation of cause and effect can never be more than 'the projection of our habit of expecting certain consequents to follow certain antecedents merely because we have observed those sequences on previous occasions.' When a child is drowned in a swimming pool, no one can say with certainty that a lifeguard would have saved him; but the experience of the community is that with guards present people are commonly saved, and this affords a sufficient basis for the conclusion that it is more likely than not that the absence of the guard played a significant part in the drowning. *Such questions are peculiarly for the jury.* Whether proper construction of a building would have withstood an earthquake, whether reasonable police precautions would have prevented a boy from shooting the plaintiff in the eye with an airgun, whether a broken flange would have made an electric car leave the rails in the absence of excessive speed, whether a collision would have occurred if the defendant had not partially obstructed the highway, and many similar questions, cannot be decided as a matter of law." (Prosser, *Proximate Cause in California* (1950) 38 Cal. L.Rev. 369, 382-383, fns. omitted, italics added.) This court quoted Dean Prosser's statement with approval in *Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 120 [184 Cal.Rptr. 891, 649 P.2d 224, 35 A.L.R.4th 1036].

Thus, under well-established law plaintiff here need not prove with certainty that the presence of security guards would have prevented the sexual assault.

III

After imposing on plaintiff the burden of showing causation with certainty, the majority also concludes that defendants are entitled to summary judgment unless plaintiff proves "it was 'more probable than not' that additional security precautions would have prevented the attack." (Maj. opn., *ante,* at p. 776.) Again, the majority is wrong.

At the summary judgment stage, the plaintiff need only produce evidence sufficient to permit a reasonable trier of fact to infer that it is more probable

than not that the defendants caused the injury. A motion for summary judgment may be granted only when no *"triable issue of one or more material facts"* remains for trial. (Code Civ. Proc., § 437c, subd. (*o*)(1) & (2), italics added.) A triable issue of material fact exists when the evidence as a whole is sufficient to permit a reasonable trier of fact to infer the existence of the requisite fact. (Code Civ. Proc., § 437c, subd. (c); *Calvillo-Silva v. Home Grocery* (1998) 19 Cal.4th 714, 735-736 [80 Cal.Rptr.2d 506, 968 P.2d 65].) Thus, the critical inquiry at the summary judgment stage is *not* whether the court ruling on a summary judgment motion, or an appellate court reviewing that ruling, concludes the plaintiff has produced evidence that an element of the plaintiff's cause of action is more probable than not. Rather, it is whether the plaintiff has produced evidence from which *a reasonable trier of fact* could conclude that the evidence is sufficient to establish that an element of the cause of action is more probable than not.

This distinction is critical. Surely some reasonable jurors could conclude that it is more probable than not that the presence of security guards would have deterred the attack on plaintiff here. Although there may be some criminals so reckless as to attack a person in broad daylight notwithstanding the presence of security guards, common sense suggests that such criminals are a minority. Knowing nothing about plaintiff's never-apprehended assailants, a jury might reasonably conclude that such individuals are more likely to be among the typical class of criminals who would be deterred by the presence of security guards instead of among the reckless few who would not.

The majority's errors deprive plaintiff of her constitutional right to a trial by jury. A judge ruling on a motion for summary judgment is not sitting as a trier of fact. When, as here, the plaintiff has a triable issue of material fact it is the jury that must decide the issue. (*Reeves v. Sanderson Plumbing Products, Inc.* (2000) 530 U.S. 133, 150 [120 S.Ct. 2097, 2110, 147 L.Ed.2d 105]; Rest.2d Torts, § 328C, subd. (a); Prosser & Keeton, Torts (5th ed. 1984) § 41, p. 267.)

## IV

Here, plaintiff offered evidence from which a reasonable trier of fact could find that defendants' failure to maintain their property in a safe condition was more than a minimal cause of plaintiff's assault. (See dis. opn. of Werdegar, J., *post*, at pp. 792-794.) Plaintiff need show nothing more to avoid summary judgment.

I would affirm the judgment of the Court of Appeal.

Werdegar, J., concurred.

**WERDEGAR, J.**—I respectfully dissent.

The narrow question presented in this case, which comes to us on summary judgment, is whether defendants have demonstrated, with respect to the proximate cause element of plaintiff's claim, that "there is no triable issue as to any material fact and that [defendants are] entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) The majority clouds the issue with repeated references to *Sharon P. v. Arman, Ltd.* (1999) 21 Cal.4th 1181 [91 Cal.Rptr.2d 35, 989 P.2d 121] (*Sharon P.*) and *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666 [25 Cal.Rptr.2d 137, 863 P.2d 207] (*Ann M.*), cases in which we were concerned with policy-laden questions about the existence and scope of a landlord's *duty* to maintain reasonably safe premises. There, we articulated limitations on such duties, thus providing California property owners with significant protection against potential premises liability. But defendants in this case do not contest the trial court's finding—based on overwhelming evidence—that they owed and breached a duty of care toward plaintiff.

The majority thus mistakenly identifies our primary concern in this case as "the need to balance . . . competing policy concerns" (maj. opn., *ante*, at p. 766). The question of causation long has been recognized as a *factual* one, and it is only " 'where reasonable men [and women] will not dispute the absence of causality' " (*Constance B. v. State of California* (1986) 178 Cal.App.3d 200, 207 [223 Cal.Rptr. 645]) that it becomes a question of law and may properly be withheld from the jury. Our prior pronouncements specifically recognize that causation is a question of fact in this type of case, i.e., where the issue is whether the defendant's negligence was a substantial factor in causing injuries inflicted during a criminal attack by a third party. (See, e.g., *Landeros v. Flood* (1976) 17 Cal.3d 399, 411 [131 Cal.Rptr. 69, 551 P.2d 389, 97 A.L.R.3d 324].)

In its recent premises liability jurisprudence—including *Sharon P.* (landlord has no duty to secure premises absent "indications of a reasonably foreseeable risk of violent criminal assaults in that location" [21 Cal.4th at p. 1199; see also *id.* at p. 1200 (conc. & dis. opn. of Werdegar, J.)]) and *Ann M.* (a "high degree of foreseeability" of similar assaults is required to impose duty of hiring security guards [6 Cal.4th at p. 679])—this court has gone far to protect California landlords; the majority, in my view, goes astray in this case in straining further to insulate even the most careless from their minimal responsibilities and, in so doing, distorts the law of causation.

Contrary to the majority's implication, were this case permitted to proceed it would *not* go to the jury on " 'abstract negligence [alone]' " (maj. opn.,

*ante*, at p. 773), nor, emphatically, would allowing trial on causation " 'make the landowner the insurer of the absolute safety of everyone who enters the premises' " (*id.* at p. 774). Plaintiff's causation evidence, including her own testimony and that of her expert, is both detailed and nonspeculative. And affirmance on plaintiff's causation theory would vindicate nothing more than the established principle that, "[w]here the occupier of land is aware of a concealed condition involving in the absence of precautions an unreasonable risk of harm to those coming in contact with it . . . , the trier of fact can reasonably conclude that a failure to warn or to repair the condition constitutes negligence." (*Rowland v. Christian* (1968) 69 Cal.2d 108, 119 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].)

We do not in this case confront a difficult line-drawing problem. (See maj. opn., *ante*, at p. 777, wondering " '[h]ow many guards are enough? Ten? Twenty? Two hundred?' ") Defendants failed to provide *any* regular daytime security personnel—except, significantly, for their own manager. Had defendants' guard, charged with escorting their manager, escorted plaintiff, it is difficult to imagine that the attack on plaintiff would have occurred. And, to the extent providing a single guard charged with escorting daytime deliveries might have discharged defendants' obligation to plaintiff, that is all we need to say. Obviously, what constitutes reasonable care in a future case remains a factual question dependent on the circumstances.

It bears emphasis that if a defendant has taken reasonable care in the discharge of its duty, then *no breach will be found even if a plaintiff nevertheless suffers injury.* Our permitting this case to proceed, therefore, would *not* make a landlord the "insurer" of all who enter its premises. In suggesting otherwise, the majority engages in an emotional argument devoid of legal analysis.

The majority concludes in essence that defendants met their burden of showing that the proximate cause element of plaintiff's claim "cannot be established" (Code Civ. Proc., § 437c, subd. (*o*)(2)) by pointing to the probabilistic nature of her evidence, particularly her expert's declaration. Because "she cannot prove the identity or background of her assailants" (maj. opn., *ante*, at p. 776), the majority reasons, she cannot show that defendants' lax daytime security was a substantial factor in causing her injuries. (*Ibid.*, citing, inter alia, *Nola M. v. University of Southern California* (1993) 16 Cal.App.4th 421 [20 Cal.Rptr.2d 97] (*Nola M.*); *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472 [50 Cal.Rptr.2d 785] (*Leslie G.*).) For the following reasons, I disagree.

First, the majority's argument depends on false premises. It is *not* plaintiff's position that defendants were negligent in failing to post guards at the

complex gates in particular. Rather, she alleges in her complaint that defendants "failed to maintain their premises in a safe condition and failed to provide adequate security to persons on their property." Her expert testified that "daytime security [guards] *and* a more concerted effort to keep the gates repaired and closed" (italics added) would have deterred the attack she suffered. The majority mischaracterizes plaintiff's position apparently because it wishes to argue "she cannot show that defendants' failure to provide increased daytime security at each entrance gate or functioning locked gates was a substantial factor in causing her injuries" (maj. opn., *ante*, at p. 776), but the argument is a non sequitur. Plaintiff does *not* have to prove that security lapses "at each entrance gate" contributed to her injuries; she has only to raise a triable issue as to whether she would have been attacked "if defendants had provided [reasonable] additional security precautions" (*id.* at p. 767).

The majority also relies on the patently false assumption that "[t]he primary reason for having . . . guards stationed at every entrance would be to exclude *unauthorized* persons and trespassers from entering." (Maj. opn., *ante*, at p. 776.) To the contrary, I submit, it is plain that defendants' primary reason (as ordinarily it would be any landlord's primary reason) for having security guards was to deter *all* criminal behavior, not just trespassing, by *any* person (including tenants, not just unauthorized entrants).

As the majority concedes, defendants' ongoing (day and night) crime problem included criminal activity throughout the premises by tenants and their guests, including possible gang members. (See maj. opn., *ante*, at p. 770.) The security guards defendants engaged for night duty were charged with patrolling and protecting—and routinely did patrol—the entire premises. Numerous patrol officers' reports, submitted by both sides, reveal that defendants' guards secured and monitored vacant apartments, parking lots, carports and parked vehicles, swimming pool areas, a weight room, a storage shed, laundry rooms, and trash bin areas. Indeed, references to "continuous patrol of the complex" appear in almost every patrol report in the record. These same reports reveal that defendants' nighttime security guards regularly approached and were approached by tenants and their guests, in the common areas and at tenants' front doors, in connection with suspected criminal activity, such as vandalism, car theft, drug activity, and noise. Dozens of patrol reports note that security guards "checked for any suspicious activity" *throughout* the complex. Such evidence renders incredible the majority's pretense that defendants' nighttime security guards were—and that, impliedly, any daytime security guards would likewise have been— "stationed at every entrance" primarily to "exclude . . . trespassers." (Maj. opn., *ante*, at p. 776.)

The majority adopts this false premise, again, apparently because it wishes to argue that "the assault on plaintiff could well have been made by tenants having authority to enter and remain on the premises." (Maj. opn., *ante*, at p. 776.) As plaintiff "cannot prove the identity or background of her assailants" (*ibid.*), the majority argues, she has an insurmountable proof problem. But this argument also is a non sequitur, because plaintiff does not have to prove she was assaulted by a nontenant. She has only to raise a triable issue as to whether defendants' failure to provide increased daytime security was a "substantial factor" in causing her injuries. (*Mitchell v. Gonzales* (1991) 54 Cal.3d 1041, 1052-1054 [1 Cal.Rptr.2d 913, 819 P.2d 872]; see also Rest.2d Torts, § 431, subd. (a).)

Second, the majority's attack on plaintiff's causation evidence is specious. The majority seeks to invoke the rule that " 'proof of causation cannot be based on . . . an expert's opinion based on inferences, speculation and conjecture.' " (Maj. opn., *ante*, at p. 775, quoting *Leslie G., supra*, 43 Cal.App.4th at p. 488.) But the majority's attempt is unavailing, as the rule does not apply.

Plaintiff's causation evidence is not suspect merely because it includes expert testimony. The cases are legion in which expert testimony is accepted as competent evidence of causation.[1] The majority never makes clear whether its global attack on "the speculative testimony of supposed security 'experts' " (maj. opn., *ante*, at p. 774) is meant to overrule such cases.

Nor is plaintiff's causation evidence " 'pure speculation or conjecture' " (maj. opn., *ante*, at p. 776) because some of it is probabilistic. " 'Proof of the relation of cause and effect can never be more than "the projection of our habit of expecting certain consequents to follow certain antecedents merely because we have observed those sequences on previous occasions." When a

---

[1]See, e.g., *Bockrath v. Aldrich Chemical Co.* (1999) 21 Cal.4th 71, 79 [86 Cal.Rptr.2d 846, 980 P.2d 398] (noting in cases "presenting complicated . . . medical causation issues, the standard of proof ordinarily required is ' "a reasonable medical probability based upon competent expert testimony that the defendant's conduct contributed to [the] plaintiff's injury" ' "); *State Farm Fire & Casualty Co. v. Von Der Lieth* (1991) 54 Cal.3d 1123, 1132 [2 Cal.Rptr.2d 183, 820 P.2d 285, 30 A.L.R.5th 786] (noting "expert testimony overwhelmingly supported the jury's determination that the predominating cause of the loss [to homes damaged by earth movement] was third party negligence"); *Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 125 [184 Cal.Rptr. 891, 649 P.2d 224, 35 A.L.R.4th 1036] (stating defendant "could have attempted to refute plaintiff's theory of causation by producing evidence (including expert testimony, if desired) that a bar or pole would not have prevented the accident" involving a bus patron's fall, but "the trial court's grant of the motion for nonsuit prematurely and erroneously withdrew these issues from the jury"); *Seneris v. Haas* (1955) 45 Cal.2d 811, 816 [291 P.2d 915, 53 A.L.R.2d 124] (agreeing "error was committed in excluding the expert testimony . . . offered . . . in the field of anatomy, biology, pathology, histology and causation").

child is drowned in a swimming pool, no one can say with certainty that a lifeguard would have saved him; but the experience of the community is that with guards present people are commonly saved, and this affords a sufficient basis for the conclusion that it is more likely than not that the absence of the guard played a significant part in the drowning. *Such questions are peculiarly for the jury.* Whether proper construction of a building would have withstood an earthquake, whether reasonable police precautions would have prevented a boy from shooting the plaintiff in the eye with an airgun, whether a broken flange would have made an electric car leave the rails in the absence of excessive speed, whether a collision would have occurred if the defendant had not partially obstructed the highway, and many similar questions, cannot be decided as a matter of law.' " (*Campbell v. General Motors Corp., supra,* 32 Cal.3d at p. 120, quoting Prosser, *Proximate Cause in California* (1950) 38 Cal. L.Rev. 369, 382-383, italics added in *Campbell.*)

Similarly, no one can say with certainty that heightened security would have deterred the attempted rape of plaintiff, nor is this plaintiff's burden. Contrary to the majority's implication, plaintiff is not required to show that "roving guards" or any particular security measure or combination of security measures "*would have . . . prevented the attack.*" (Maj. opn., *ante*, at p. 777, italics added.) The experience of the community is that with security guards present such crimes commonly are deterred. "The fact of causation is incapable of mathematical proof, since no man can say with absolute certainty what would have occurred if the defendant had acted otherwise. If, *as a matter of ordinary experience, a particular act or omission might be expected to produce a particular result, and if that result has in fact followed, the conclusion may be justified that the causal relation exists.*" (Rest.2d Torts, § 433B, com. b, p. 443.) To the extent the majority holds otherwise, it effects a monumental alteration of tort law without explanation or justification.

The mere fact expert testimony is comprised partly of opinion does not render it speculative. (See *Juchert v. California Water Service Co.* (1940) 16 Cal.2d 500, 507 [106 P.2d 886] [a party's " ' " " 'suggestion of theories' " ' " on causation " ' " " 'does not reduce the jury to mere speculation, and disqualify it from determining the cause of the injury complained of' " ' "].) The majority attacks plaintiff's expert's opinion—viz., that the "attempted rape on the plaintiff would not have occurred had there been daytime security"—as "speculative" on the ground "assaults and other crimes can occur despite the maintenance of the highest level of security." (Maj. opn., *ante*, at p. 777.) The attack fails because the truism that no security system can foreclose every *possibility* of crime does not entail, as the majority implies, that no causal inferences can ever be based on an evaluation of particular

security arrangements. If required to foreclose the logical possibility that a *seeming* causal link is only that, absent confirming testimony by the culprit, no plaintiff could ever prove causation, yet such is what the majority impliedly would require of plaintiff here. (See maj. opn., *ante*, at p. 775 [invoking *Leslie G.*'s rejection of expert testimony on the ground " 'there is evidence that the assault could have occurred even in the absence of the landlord's negligence' "].)

Third, the majority flatly misstates the requirements for proof of causation. California's "substantial factor [causation] standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 978 [67 Cal.Rptr.2d 16, 941 P.2d 1203].) The majority misunderstands the substantial factor test, improperly suggesting it burdens plaintiff with proving it " 'more probable than not' " (maj. opn., *ante*, at p. 776) that defendants' carelessness caused her injuries.

Moreover, in requiring plaintiff to "prove [her assailants] would not have succeeded in assaulting her if defendants had provided additional security precautions" (maj. opn., *ante*, at p. 767), the majority both misstates the applicable proof burden and places it on the wrong party. Plaintiff need only raise "a triable issue" of fact. (Code Civ. Proc., § 437c, subd. (*o*)(2).) "The issue of causation may be decided as a question of law only if, under undisputed facts, there is no room for a reasonable difference of opinion." (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 864 [64 Cal.Rptr.2d 324]; accord, *Pool v. City of Oakland* (1986) 42 Cal.3d 1051, 1063 [232 Cal.Rptr. 528, 728 P.2d 1163].) And at the summary judgment stage, it is the *defendant* that has the burden of showing "that one or more elements of the cause of action . . . cannot be established." (Code Civ. Proc., § 437c, subd. (*o*)(2).)[2] In failing to come to grips with these rudimentary aspects of a lawsuit sounding in tort, the majority ignores standard procedure and calls into question a body of law long thought settled.

Contrary to the majority's suggestion, we do not require that tort plaintiffs, in order to evade summary judgment, "show some substantial link or nexus between omission and injury" (maj. opn., *ante*, at p. 778) beyond what "a rule of common sense" (*ibid.*) as applied by a reasonable jury might reveal. Like other fact questions, that of causation indisputably is entrusted

---

[2]Nothing in the majority's dictum discussing the 1992 and 1993 amendments to Code of Civil Procedure section 437c, the summary judgment statute, undermines these principles. (See maj. opn., *ante*, at p. 768 [conceding the amendments " 'did not change the fundamental requirement that the moving party prove its right to summary judgment' " and acknowledging that, as before, defendants must make "a showing that would forecast the inevitability of a nonsuit"].)

to "the common sense which we have traditionally attributed to that body." (*O'Keefe v. South End Rowing Club* (1966) 64 Cal.2d 729, 755 [51 Cal.Rptr. 534, 414 P.2d 830, 16 A.L.R.3d 1] (dis. opn. of Peek, J.).) In the past, we have found "no reason to assume that a . . . common sense determination of . . . [causal] responsibility will be beyond the ken of . . . juries" (*Safeway Stores, Inc. v. Nest-Kart* (1978) 21 Cal.3d 322, 332 [146 Cal.Rptr. 550, 579 P.2d 441]), and the majority provides no reason to assume so here.

As noted, the majority speculates "the assault on plaintiff could well have been made by tenants" (maj. opn., *ante*, at p. 776), but even if accurate that surmise is not determinative. Indeed, the possibility of criminal assaults by tenants would point to the need for heightened daytime security. That tenants by definition are "authorized and empowered to enter . . . and remain on the premises" (*ibid.*) obviously cannot diminish—or, as the majority effectively would have it, eliminate—a landlord's duty to "maintain their premises in a reasonably safe condition" (*Sharon P., supra*, 21 Cal.4th at p. 1189), which duty, in any event, defendants do not dispute. That plaintiff cannot eliminate tenants as the culprits cannot fulfill defendants' "burden of showing that a cause of action has no merit" (Code Civ. Proc., § 437c, subd. (*o*)(2)).

Defendants, it bears repeating, do not dispute they had a duty to plaintiff, that they breached that duty, and that plaintiff sustained serious injuries. At a minimum, reasonable minds can differ as to the inferences to be drawn from the causation evidence plaintiff has adduced, i.e., as to whether the haven for crime defendants knowingly allowed to flourish at their apartment complex was a substantial factor contributing to the attack on plaintiff. The majority cites no rule of law that would bar a jury's drawing an inference either way.

The majority's core authorities on the causation question are neither binding nor persuasive. *Nola M., supra*, 16 Cal.App.4th 421, and *Leslie G., supra*, 43 Cal.App.4th 472, on which the majority principally relies, being Court of Appeal opinions, do not bind this court. *Nola M.*, in fact, conflicts with our prior pronouncements. (Compare *Isaacs v. Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 131, fn. 8 [211 Cal.Rptr. 356, 695 P.2d 653] (*Isaacs*) [implying that foreseeability evidence considered by trial court in ruling on duty could raise triable causation issue] with *Nola M., supra*, at p. 428, fn. 5 [dismissing our footnote in *Isaacs* as a "slip of the pen"].) The majority does not expressly disavow our implication in *Isaacs*, but purports to distinguish this case as involving only "a general finding of . . . foreseeability" that "criminal assaults of some kind might occur on the premises." (Maj. opn., *ante*, at pp. 777, 778; see also p. 777, citing *Isaacs, supra*, at p. 131, fn. 8.) Contrary to the majority's characterization, the trial court's

minute order on summary judgment, noting "overwhelming evidence" of "rampant violence" in the complex, expressly finds a " '*high* foreseeability' that violent crime *would* occur on [defendants'] premises" (italics added). (Cf. *Ann M.*, *supra*, 6 Cal.4th at p. 679 [high degree of foreseeability permits finding that "the scope of a landlord's duty of care includes the hiring of security guards"].)

In any event, *Nola M.* and *Leslie G.* are readily distinguishable. *Nola M.*, *supra*, involved only marginal misfeasance (see 16 Cal.App.4th at p. 425 [defendant university provided eight trained security officers for patrolling quarter-mile-square area]), rather than, as here, complete nonfeasance, defendants having provided no daytime security whatsoever. *Leslie G.*, *supra*, involved a rape perpetrated by a single person in an underground parking garage in the middle of the night (43 Cal.App.4th at pp. 476-477), whereas the attack here was perpetrated by three men in broad daylight in a walkpath across defendants' premises. Indisputably, a reasonable jury in this case could conclude, contrary to the majority, that "roving guards would have encountered [plaintiff's] assailants or prevented the attack" (maj. opn., *ante*, at p. 777). Certainly, at the least, a jury could reasonably infer that an escort would have done so. Ultimately, the majority cites no authority either compelling or justifying its foreclosure of plaintiff's opportunity to seek relief for the grievous injuries she sustained while delivering a package on defendants' premises.

Viewed objectively, plaintiff's causation evidence plainly raises a triable issue of fact. The record reveals that plaintiff presented, aside from her expert's declaration, considerable direct, nonspeculative evidence on causation. She testified to the circumstances of the assault as follows: She was attacked on a clear, sunny day and was carrying a package at the time. She first saw two of the attackers loitering outside a propped-open gate as she entered the complex, and first saw the third when she was walking through the complex to deliver the package. The apartment to which she tried to deliver her package was on the ground floor, and before going there she consulted some sort of "central map." She waited about two minutes for the doorbell to be answered; when it was not, she chose one of the straighter (less "winding") exit walkways, which headed towards an exit on the south side of the complex.

The parties' separate statements of undisputed facts establish that the assault on plaintiff took place while she was in the walkpath. Plaintiff testified that she stopped and looked at her assailants before they jumped her, that her assailants engaged her in conversation before they physically attacked her, and that what they said to her panicked her.

The record also contains the declaration of plaintiff's expert, Robert Feliciano. Feliciano inspected the premises, interviewed plaintiff about the attack, and reviewed records showing what security was in place at the time of the attack. Feliciano also reviewed depositions given by defendants' head of security and defendants' on-site manager. He reviewed police records showing that a massive, ongoing crime problem existed at the premises, as well as private security records revealing that drug trafficking occurred on the premises the day of the attack and describing the general state of security on the premises in the period preceding the attack on plaintiff.

Feliciano further was informed that local police had advised defendants to hire daytime security guards and was apprised of defendants' manager's standing request for a security escort whenever she proceeded from her apartment to her vehicle, which request was in place the day plaintiff was attacked. Contrary to the majority's implication, therefore, Feliciano delivered, not an opinion "resting solely on speculation and surmise" (maj. opn., *ante*, at p. 775), but an opinion based on direct evidence from several sources about conditions on the day of the attack, the location of the attack, the movements of the persons involved, and details of the attack itself. The majority does not dispute that plaintiff's expert was qualified to opine on the efficacy of security guards to deter particular types of crimes under particular circumstances. (See maj. opn., *ante*, at p. 771.) Unquestionably, the evidence on which he relied was sufficient rationally to ground his testimony that plaintiff's injuries probably would not have occurred if defendants had supplied daytime security.

In sum, plaintiff submitted sufficient evidence, including expert testimony, to permit a rational jury to find that defendants' omissions were a substantial factor in causing her injuries. As explained, plaintiff's testimony included details about the perpetrators, the location, the circumstances and the events of the attack she suffered. A rational jury hearing plaintiff's testimony *alone* could find it probable that reasonable daytime security patrols, or an on-call security escort for delivery people (like the one defendants engaged for their manager), would have deterred her attackers. And a rational jury certainly could find a causal link credibly established by the combination of plaintiff's testimony and her expert's declaration, which drew on a variety of disinterested sources. To this we must add plaintiff's evidence that a county sheriff who had "worked closely with the premises during the period of the attack and one year prior to the attack" told defendants they should "hire more security during the daytime." A rational jury certainly could conclude police would not have given such advice unless they believed daytime security would have diminished crime at the

complex. Evidently defendants themselves believed in the efficacy of security guards or they would not have engaged them, as they did at night and to escort their manager. The majority does not even attempt to justify its casual rejection of this weighty evidence.

The majority mischaracterizes plaintiff's causation theory as depending on the notion that "her assailants were indeed unauthorized to enter" (maj. opn., *ante*, at p. 776) and, warping both causation and evidence law, requires her to "prove the identity or background of her assailants" (*ibid.*). The majority fails even to acknowledge, let alone evaluate, the detailed and specific evidence plaintiff presented regarding the perpetrators, location, and circumstances of the attack she suffered. Instead, the majority engages in misdirection, noting there were "other spaces where a rape could take place" (maj. opn., *ante*, at pp. 772, 777), and in "mere speculation . . . unsupported by any proven facts" (*Showalter v. Western Pacific R. R. Co.* (1940) 16 Cal.2d 460, 478 [106 P.2d 895]) as to a possible defense, observing that plaintiff's assailants "could have been tenants" (maj. opn., *ante*, at p. 776).[3]

Again invoking policy, the majority expresses concern that "the ultimate costs of imposing liability for failure to provide sufficient daytime security to prevent assaults would be passed on to the tenants of low-cost housing . . . , adding to the financial burden on poor renters." (Maj. opn., *ante*, at p. 777.) The majority does not mention the economic cost to tenants of allowing crime to flourish. As noted earlier in this opinion, such policy considerations relate principally to duty rather than causation. But even assuming the relevance of the assertion, and assuming in addition the truth of the majority's unstated and unsupported premise that neither market forces nor regulation would cause landlords to absorb reasonable security costs, unlike the majority I am unwilling to assume that California renters, of whatever economic status, would elect to live in circumstances where they and their guests are subject to constant fear and, as in this case, the actuality of rampant crime and violent assault, in preference to a marginal upward pressure on rents.

Regrettably, plaintiff's "assailants were never apprehended and their identity remains unknown to her" (maj. opn., *ante*, at p. 767). That she should be barred from the courthouse *for this very reason*, is both cruelly ironic and legally unjustified.

---

[3]In *Showalter v. Western Pacific R. R. Co., supra*, 16 Cal.2d 460, we upheld as based on substantial evidence a jury's finding that the defendant employer's negligence in coupling rail cars proximately caused injury to the deceased (who died after falling from a gondola car), rejecting the employer's suggestion that, as the "deceased may have tripped or lost his balance for any number of reasons" (*id.* at pp. 477-478), it was equally possible his death occurred "through unavoidable accident . . . or through his own negligence" (*id.* at p. 477).

.

For the foregoing reasons, I would affirm the judgment of the Court of Appeal and allow plaintiff to proceed with her claim.

Mosk, J., and Kennard, J., concurred.