[No. B182831. Second Dist., Div. One. Oct. 27, 2006.]

TRINIDAD MACIAS, Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts III. and IV.

COUNSEL

Schonbrun DeSimone Seplow Harris & Hoffman, Paul L. Hoffman, Michael Morrison; Law Offices of Vicki I. Sarmiento and Vicki I. Sarmiento for Plaintiff and Appellant.

Raymond G. Fortner, Jr., County Counsel, Roger H. Granbo and Donna B. Koch, Deputy County Counsel; Greines, Martin, Stein & Richland, Martin Stein, Carolyn Oill and Lillie Hsu for Defendants and Respondents.

OPINION

**ROTHSCHILD, J.**—Trinidad Macias appeals from the summary judgment entered against him on his complaint for violation of his civil rights. The complaint alleged that a number of deputies of the Los Angeles County Sheriff's Department executed a search warrant at Macias's home in an unreasonable manner. The trial court granted summary judgment on the ground that Macias failed to introduce evidence showing violation of a clearly established constitutional right. We reverse.

## BACKGROUND[1]

Approximately 5:00 a.m. on August 28, 2002, Macias was praying the rosary as he sat on the toilet in his home in Pico Rivera, California. Macias, then a 60-year-old retired college professor, has 90 percent hearing loss in both ears and was not wearing his hearing aid at the time. He was dressed in only a T-shirt, with no clothing below the waist.

Macias felt a rumbling sensation under his feet that felt like an earthquake, and then three deputies wearing combat-type clothing burst into the bathroom with their guns drawn. Macias pointed to his ears to try to indicate that he was deaf.

---

[1] Because Macias appeals from the summary judgment against him, we view the evidence in the light most favorable to Macias, liberally construing his evidentiary showing and strictly construing defendants'. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)

The deputies pulled Macias off the toilet, threw him to the floor, and dragged him outside, striking his shoulder against the wall in the process. Once outside, he was guarded by another deputy. Macias was forced to stand in his driveway wearing nothing but a T-shirt, with his genitals exposed, under guard and unable to reenter his house to get more clothing or his hearing aid, for roughly one hour. It took the deputies only about four minutes, however, to determine that there were no safety threats within Macias's home. Because of Macias's sparse clothing, it was immediately apparent that Macias himself was not a safety threat.

The deputies were searching Macias's home pursuant to a warrant issued on the basis of information collected by Detective Ruben Nava. A confidential informant had told Nava that Steve Hernandez, a reputed member of the Pico Nuevo street gang, lived in the garage at Macias's home. According to the informant, Hernandez sold methamphetamines from Macias's garage without Macias's knowledge and also stored weapons either in the garage or under the house. The informant further indicated that Macias's home was "an ideal location" for Hernandez's activities because law enforcement did not suspect any criminal activity there.[2] Nava took certain steps to corroborate the information supplied by the informant, and on one occasion he personally observed Hernandez standing in the doorway of Macias's garage. Macias does not argue that the warrant was not supported by probable cause or was otherwise defective.

The deputies found no drugs or guns when they searched Macias's home on August 28, 2002. They did find a poster "depicting gang graffiti of the Pico Nuevo gang" in Macias's garage.

After completing their search of Macias's house, garage, and automobiles, the deputies allowed Macias to reenter his home, put on his hearing aid, and cover his body. The deputies told Macias that the search related to Hernandez, but Macias explained that Hernandez lived down the street with his mother, not with Macias. Some deputies then left to attempt to search Hernandez's

---

[2] Macias contends that the informant said the location was ideal "because of Mr. Macias' advanced age and *his* lack of suspicion of criminal activity going on at his residence," thereby implying that Nava's affidavit in support of the warrant made clear that Macias "had nothing to do with [the] criminal activity that was being investigated." (Italics added.) The record does not support the contention. As Nava's affidavit states, the informant told Nava that Macias's home was an ideal location "because *law enforcement* does not suspect any criminal activity coming from this home." (Italics added.) The informant did say that Macias did not know that Hernandez was selling methamphetamines out of the garage, but the informant did not say that Macias did not know about the weapons Hernandez was allegedly storing in the garage or under the house. We do not mean to suggest that Macias did know of any criminal conduct that was allegedly underway at his home—we note only that, contrary to Macias's contention, Nava's affidavit did not state that Macias knew nothing about any such conduct.

mother's house, for which they did not have a warrant. The attempted search at the Hernandez home took approximately 20 to 40 minutes. Other deputies continued to detain Macias inside his own home until the attempted search of the Hernandez home was completed.

Macias filed suit against the County of Los Angeles, Sheriff Leroy Baca, and two sheriff's department employees, alleging claims for violation of section 1983 of title 42 of the United States Code (hereafter section 1983), disability discrimination, negligence, assault and battery, false arrest or false imprisonment, and intentional infliction of emotional distress. Macias later amended his complaint to name all members of the team that executed the search warrant, plus Nava, as defendants.[3] The team leader was Sergeant Frank Carey, and the other members of the team were Detectives Carlos Ponce, Michael Cadiz, Douglas Jensen, Mark Lopez, Dawn Retzlaff, John Rossman, and Jonas Shipe.

In October 2004, the trial court granted summary judgment in favor of Baca and the other two individuals originally named as defendants. It also granted summary adjudication in favor of the county on Macias's claim for municipal liability and in favor of all defendants on Macias's claim for disability discrimination. Macias has not challenged those rulings.

The remaining defendants moved for summary judgment on the remaining claims in November 2004. They argued that they were entitled to qualified immunity on the section 1983 claim because (1) the facts alleged by Macias did not constitute a violation of any constitutional right, and (2) even if there was a constitutional violation, the right was not clearly established. Defendants further argued that all of Macias's state law claims failed as a matter of law.

In support of their motion, defendants introduced evidence of the following facts: When the members of the team arrived at Macias's home to execute the warrant, they knocked and announced their presence more than once but received no reply. Rossman then forced open the door to Macias's house.[4] Shipe and Cadiz were the first to enter, followed by Carey; Rossman also entered but remained just inside the door he had forced open. Seconds after Shipe and Cadiz entered the house, they encountered Macias standing in a hallway. Macias was wearing an "over-sized T-shirt," apparently covering his genitals. Cadiz walked Macias toward the door, at some point handing him off to Lopez, who had entered the house as well. Lopez took Macias to the door and transferred him to Retzlaff, who detained him outside while the

---

[3] Macias also added Detective Albert Pelaez as a defendant but later voluntarily dismissed him.

[4] Macias introduced evidence that Lopez was also involved in forcing the door open.

deputies inside the house continued to search and secure it. Not more than four minutes later, when the house was secure, Macias was brought back inside.

In opposition to defendants' motion, Macias introduced evidence supporting his version of the facts, but he could not identify the three officers who originally encountered him in the bathroom, threw him to the floor, and dragged him outside. Instead, he argued that all members of the team, plus Nava, could be held liable for the unreasonable execution of the warrant because of their "integral participation."

The trial court granted defendants' motion on the ground that "[t]he facts presented fail to create a triable issue as to whether a reasonable officer would have understood he was violating a clearly established constitutional right." It also found that Carey was not subject to supervisory liability because there was no evidence that he "was responsible for hiring, selection or training of the detectives . . . ." Finally, the court agreed that the state law claims failed as a matter of law, finding in particular that there was no "triable issue as to the allegations of unreasonable force."

The court entered judgment on March 3, 2005. Macias timely appealed.

## STANDARD OF REVIEW

"Because plaintiff[] appealed from the trial court's order granting defendants summary judgment, we independently examine the record in order to determine whether triable issues of fact exist to reinstate the action." (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1142 [12 Cal.Rptr.3d 615, 88 P.3d 517].)

## DISCUSSION

### I. Qualified Immunity

Macias argues that the trial court erred when it granted summary judgment on his section 1983 claim on the basis of qualified immunity. We agree.

Section 1983 creates a cause of action against any person who, acting under color of state law, violates rights created by the Constitution and laws of the United States. Qualified immunity is an affirmative defense to such claims. (*Siegert v. Gilley* (1991) 500 U.S. 226, 231 [114 L.Ed.2d 277, 111 S.Ct. 1789].)

"To determine if an official is entitled to qualified immunity, a court must first ask whether, '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right[.]' (*Saucier v. Katz* (2001) 533 U.S. 194, 201 [150 L.Ed.2d 272, 121 S.Ct. 2151].) When a court determines 'no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.' (*Ibid.*) If the court concludes 'a violation could be made out on a favorable view of the parties' submissions,' the court must then ask 'whether the right was clearly established . . . in light of the specific context of the case . . . .' (*Ibid.*)" (*Ritschel v. City of Fountain Valley* (2006) 137 Cal.App.4th 107, 116 [40 Cal.Rptr.3d 48].)

We note at the outset that the trial court erred in its qualified immunity analysis by failing to determine whether the alleged facts showed a violation of a constitutional right. As the United States Supreme Court has emphasized, "the requisites of a qualified immunity defense must be considered in proper sequence," so a court ruling on a qualified immunity defense *must* first consider the "threshold question" of whether the facts alleged show a violation of a constitutional right. (*Saucier v. Katz* (2001) 533 U.S. 194, 200–201 [150 L.Ed.2d 272, 121 S.Ct. 2151].) It was therefore error for the trial court to "skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case." (*Id.* at p. 201.)

We conclude that Macias has introduced sufficient evidence of alleged facts that, if proved, would show violation of a constitutional right. The parties agree that the Fourth Amendment to the United States Constitution requires that a detention incident to a search be carried out in a reasonable manner. (*Franklin v. Foxworth* (9th Cir. 1994) 31 F.3d 873, 875–876.) The record contains evidence from which a jury could reasonably conclude that Macias, wearing nothing but a T-shirt that left his genitals exposed, was detained outside for approximately one hour despite the fact that deputies determined within four minutes that neither Macias himself nor anything inside his house posed a safety threat. If those are indeed the facts, then Macias's detention was patently unreasonable.

Defendants' entire argument to the contrary consists of the following two sentences: "The deputies also acted reasonably in detaining plaintiff in his driveway while they searched his house—both to prevent him from grabbing a weapon or destroying evidence and to keep him out of harm's way. [Citations.] The length of the search was also reasonable given its scope. [Citations.]" We disagree. While defendants' argument might justify briefly whisking Macias out of the house both for his own safety and to prevent him from destroying evidence or picking up a weapon, it fails to show that

Macias's seminude, hour-long, outdoor detention was reasonable. Once Macias was under the deputies' control, there was no risk of his destroying evidence or arming himself. Any remaining safety issues concerning the interior of the house were resolved within minutes. There was no reasonable justification for keeping Macias outside with his genitals exposed for an hour.

Having determined that Macias introduced sufficient evidence of facts showing a violation of a constitutional right, we proceed to the second step of the qualified immunity analysis, namely, whether the right was clearly established. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." (*Saucier v. Katz, supra*, 533 U.S. at p. 202.) For a right to be clearly established, it is not necessary that "the very action in question has previously been held unlawful . . . ." (*Hope v. Pelzer* (2002) 536 U.S. 730, 739 [153 L.Ed.2d 666, 122 S.Ct. 2508].) Rather, all that is required is that existing law give the defendants "fair warning" that their conduct is unlawful. (*Id.* at pp. 739–740; see also *United States v. Lanier* (1997) 520 U.S. 259, 268–272 [137 L.Ed.2d 432, 117 S.Ct. 1219].) Thus, "general statements of the law are not inherently incapable of giving fair and clear warning, and . . . a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question . . . ." (*United States v. Lanier, supra*, 520 U.S. at p. 271; see *Hope v. Pelzer, supra*, 536 U.S. at p. 741.)

We conclude that it should have been clear to any reasonable officer that Macias's detention was unlawful, if the facts are as Macias alleges. Federal law has long required that a detention incident to a search be carried out in a reasonable manner. (*Franklin v. Foxworth, supra*, 31 F.3d at pp. 875–876.) That general rule applies with obvious clarity here—we can imagine no reasonable justification for detaining Macias outside with his genitals exposed for one hour, when Macias himself was obviously not a threat and the interior of the house was secured within four minutes.

In addition to the general rule, more specific guidance was provided more than 10 years ago by the United States Court of Appeals for the Ninth Circuit in its decision in *Franklin v. Foxworth, supra*, 31 F.3d 873. In that case, one of the plaintiffs was a man suffering from advanced multiple sclerosis. Police officers who were executing a search warrant removed the man from his sickbed, where he was wearing only a T-shirt. They "cuffed his hands behind his back, carried him to the living room, and placed him on a couch, with his genitals exposed. No effort was made to obtain clothing or any covering for him." (*Id.* at p. 875.) When "he complained that the handcuffs hurt his wrists and that he was cold and tired from sitting upright," his "hands were recuffed in front of his body and he was given a blanket," but he was not permitted to

return to his room until one hour after the police had finished searching it. (*Ibid.*) The court held that the police had detained the sick man in an unreasonable manner in violation of the Fourth Amendment. (31 F.3d at pp. 876–877.) While the facts of *Franklin v. Foxworth, supra,* 31 F.3d 873, are not identical to the facts before us, they are sufficiently similar to provide more than fair warning that the conduct Macias alleges could not possibly pass constitutional muster.

Defendants' entire argument that the right at issue was not clearly established consists of the following three sentences: "Finally, the deputies could reasonably have believed the length of the search was constitutionally permissible, given that the officers had to search the entire house, garage, and surrounding grounds. Plaintiff asserts that he was detained for up to an hour outside his house while the deputies searched. But it is not the length of time that determines if the detention was reasonable—indeed, much longer detentions have been upheld as not excessive. [Citations.]"

■ The argument fails. The length of Macias's detention outside, with his genitals exposed, cannot have been justified by the fact that the deputies had to search the garage and surrounding grounds in addition to the house. Once the house was secured after four minutes of searching, there was no reason not to bring Macias back inside while the search continued elsewhere. And the fact that much longer detentions have been upheld as reasonable is irrelevant. It was not the length *alone* of Macias's detention that rendered the detention unreasonable. Rather, we hold that Macias's one-hour detention outside with his genitals exposed was unreasonable, given that the deputies determined within four minutes that neither Macias nor anything inside the house posed a safety threat.

For all of these reasons, we conclude that the trial court erred when it granted summary judgment on the section 1983 claim on the basis of qualified immunity.

## II. Integral Participation

Macias argues on appeal, as he did in the trial court, that each of the individual defendants was an integral participant in the violation of his constitutional rights. Defendants argue to the contrary, as they did in the trial court. The trial court did not address the issue of integral participation, so we cannot affirm as to any defendants on that ground without first affording the parties an opportunity to file supplemental briefs (Code Civ. Proc., § 437c, subd. (m)(2)), which we have done. We conclude that the undisputed facts show that certain of the individual defendants were not integral participants in the violation of Macias's rights.

■ In order for an officer to be liable for the violation of Macias's constitutional rights, that officer must have been either personally involved in that violation or an integral participant in the conduct giving rise to the violation. (*Jones v. Williams* (9th Cir. 2002) 297 F.3d 930, 936 ["[E]ither integral participation or personal involvement was required before a jury could find officers liable."].) Unfortunately, the federal case law concerning what constitutes integral participation is not uniform.[5]

Some cases require that an integral participant be aware of the unlawful conduct or facilitate that conduct itself; not everyone who plays a supporting role in an otherwise lawful search, of which the unlawful conduct was a part, can be held liable. Two cases are illustrative. In *Liston v. County of Riverside* (9th Cir. 1997) 120 F.3d 965, a law enforcement task force raided a house on the basis of a warrant supported by information that the homeowner was a drug dealer. The house had recently been sold, however, and at the time of the raid it was owned and occupied by a family having nothing to do with the information underlying the warrant. (*Id.* at p. 968.) The family filed suit, alleging that the officers had continued to ransack their property and detain the entire family for roughly an hour and a half, long after the officers knew or should have known they had the wrong people. (*Ibid.*) While the Ninth Circuit concluded that the officers who admitted entering the home were not entitled to summary judgment, it affirmed summary judgment in favor of two defendants who were members of the task force but who "remained outside the house in the front yard at all times, ignorant of the facts learned by the officers inside the house." (*Id.* at p. 981.)

In *Boyd v. Benton County* (9th Cir. 2004) 374 F.3d 773, the Ninth Circuit applied similar reasoning to hold that an entire search team was potentially liable for violation of the plaintiff's constitutional rights (although the court ultimately concluded that the defendants were protected by qualified immunity because the right at issue was not clearly established). The defendant officers had executed a search warrant at an apartment early in the morning, looking for a robbery suspect. "After the officers announced their presence, [one of the defendants] reached inside the door of the dark apartment and, without looking, tossed [a] flash-bang [grenade] near the front wall and a few feet from the door." (*Id.* at p. 777.) When the grenade detonated, it burned a resident who was sleeping on the floor near the front wall. (*Id.* at pp. 777–778.) The court concluded that, under the circumstances, the use of the grenade without either looking or warning the apartment's occupants constituted excessive force, because the officers "had information leading

---

[5] There is no United States Supreme Court precedent on this issue of federal law. We therefore make an independent determination of the issue, and we accord the decisions of the Ninth Circuit no greater weight than those of other circuits. (*Forsyth v. Jones* (1997) 57 Cal.App.4th 776, 782–783 [67 Cal.Rptr.2d 357].)

them to believe that up to eight people could be sleeping within the apartment," most of whom "were unconnected to the robbery . . . ." (*Id.* at p. 779.) The court rejected the argument that only the officer who threw the grenade could be held liable. Rather, the court held that "each officer involved in the search operation was an 'integral participant[]' " in the constitutional violation, because "every officer was aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flash-bang was to be deployed." (*Id.* at p. 780.)

Other cases, however, take an even broader view of integral participation. In *James v. Sadler* (5th Cir. 1990) 909 F.2d 834, officers raided a beauty salon on the basis of information that the proprietor was involved in drug trafficking. The officers subjected the plaintiff, who was in the salon having her hair done at the time of the raid, to a brief patdown search and then brought her outside, where she was forced to remain while the search of the salon continued. (*Id.* at p. 835.) The Fifth Circuit held that every officer who participated in the raid could be liable *for the patdown search* if it was improper, even those officers who did nothing more than "guard[] the detained customers outside the shop while the search and arrest proceeded inside." (*Id.* at p. 837.) The court did not indicate that the patdown search was part of a plan of which the officers outside were aware, or that they even knew that the plaintiff had been searched.

We find *Liston v. County of Riverside* and *Boyd v. Benton County* more persuasive than *James v. Sadler*. We see no basis for imposing liability on officers for unplanned conduct that they did not engage in or facilitate themselves, and of which they were not even aware.

Applying that standard to the record before us, we conclude that summary judgment must be affirmed as to Jensen, Ponce, and Nava. Macias has not cited any evidence that any of them entered the house before Macias was removed, detained Macias outside, or were aware of Macias's seminude outdoor detention while it was proceeding. Nor is there any evidence that Macias's detention in that manner was planned or otherwise authorized in advance.

Macias's arguments that all three of those deputies were integral participants are unavailing. He argues that Jensen was armed and "either participat[ed] in the containment of the Macias property or [was] directly involved in the entry and removal of Mr. Macias from the residence." But Macias directs us to no evidence that Jensen did anything more than stand guard behind the house. Although that might be enough to make Jensen an integral participant under *James v. Sadler*, we have declined to follow that case. On the record before us, Jensen's role appears to be analogous to that of the

officers in *Liston v. County of Riverside* who stayed outside and remained ignorant of the facts learned by the officers who entered. There is no evidence that Jensen was an integral participant in the violation of Macias's rights.

Macias's argument concerning Nava and Ponce fares no better. Nava was the investigator who gathered the information and executed the affidavit on which the warrant was based. Macias asserts, without citation of evidentiary support, that Ponce prepared the tactical plan for the execution of the warrant. On that basis, Macias argues that Nava and Ponce were "aware that it was highly probable that during the execution of the search warrant members of the search team would encounter the owner of the home, whom they knew was an elderly man that was unaware of the criminal activity occurring at his residence," but they still "failed to develop a tactical plan on how to deal with Mr. Macias." The argument fails, because Macias never argues that the alleged failure to develop an appropriate tactical plan was itself a constitutional violation.[6] Nor does that alleged failure turn Nava and Ponce into integral participants in Macias's hour-long outdoor detention with his genitals exposed, because neither Nava nor Ponce had any reason to expect that the failure to develop a concrete plan in advance for the handling of Macias would lead to such an obviously unreasonable detention.

The remaining defendants are Carey, Cadiz, Shipe, Rossman, and Lopez, all of whom entered the house before Macias was taken out, and Retzlaff, who detained Macias outside. We cannot conclude, on the basis of the record before us, that any of them were not integral participants in the violation of Macias's rights. For example, the identity of the deputies who first encountered Macias is disputed—defendants contend that two deputies, Cadiz and Shipe, found Macias in a hallway, but Macias claims that three deputies stormed into his bathroom and dragged him off the toilet. We cannot resolve those factual disputes on summary judgment.

For the foregoing reasons, we affirm the summary judgment on the section 1983 claim in favor of Jensen, Ponce, and Nava on the ground that they were not integral participants in the violation of Macias's rights. We decline to affirm on that ground as to the other defendants.

### III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[6] Macias argues only that the failure to develop a tactical plan is part of the totality of the circumstances that we can consider in determining whether Macias's detention was reasonable.

*See footnote, *ante*, page 313.

## DISPOSITION

The judgment is affirmed in part and reversed in part. Appellant shall recover his costs on appeal.

Mallano, Acting P. J., and Jackson, J.,* concurred.

A petition for a rehearing was denied November 17, 2006, and the nonpublished portion of the opinion was modified.

---

*Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution