Filed 6/4/14  Roybal v. City of Santa Ana CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JEREMY ROYBAL, | |
| Plaintiff and Appellant, | G048496 |
| v. | (Super. Ct. No. 30-2012-00556466) |
| CITY OF SANTA ANA et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Robert J. Moss, Judge.  Affirmed in part; reversed in part and remanded with directions.

Michael A. Lotta for Plaintiff and Appellant.

Sonia R. Carvalho, City Attorney, and Joseph Straka, Assistant City Attorney for Defendants and Respondents.

Jeremy Roybal appeals from the judgment in favor of the City of Santa Ana and one of its police officers, Ramiro Vergara, after their motion for summary judgment was granted. Following his arrest for possession of marijuana for sale, Roybal filed the instant action alleging numerous tort and civil rights causes of action arising out of his detention and arrest. Vergara was not the officer who detained or arrested Roybal, and had no interaction with him during the incident, but had alerted other officers to the suspicious activities that focused other officers on Roybal. On appeal, Roybal argues there were material issues of fact as to whether Vergara could be liable for violation of his civil rights on the theory he was the one who "start[ed] the rock rolling down the hill." We find merit to Roybal's contentions as to Vergara. Accordingly, the summary judgment as to Vergara only is reversed, and in all other respects, the judgment is affirmed.

## FACTS AND PROCEDURE

*The Complaint*

The City and Vergara are the only named defendants in Roybal's complaint. The gist of the allegations are that on February 27, 2011, Vergara and other police officers (who were unserved Doe defendants) detained Roybal without reasonable suspicion and arrested him without probable cause, battering him in the process. Roybal alleged Vergara and the other officers illegally searched his car and fabricated that Roybal had consented to the search. The officers found marijuana in the trunk of Roybal's car but denied Roybal access to his medical marijuana card, which would have demonstrated the marijuana was for legal purposes. Roybal alleged the officers' conduct resulted in false criminal charges being brought against him. Roybal alleged the City knew Vergara had a propensity for racial profiling of young Hispanic males and a history of unreasonably detaining and arresting them. He alleged the City failed to adequately supervise, train, and control its police officers, including Vergara.

2

Roybal's complaint contained four causes of action alleged against the individual defendants only (i.e., Vergara, and police officers and supervisors who were unserved Doe defendants). Those causes of action included: assault and battery (first cause of action) based on allegations the individual defendants "offensively touch[ed] and [struck] persons based upon racism and profiling[;]" negligence (second cause of action) based on allegations Vergara and other officers negligently and carelessly engaged in racial profiling and fabricated facts to cause criminal charges to be brought against Roybal; and intentional infliction of emotional distress (third cause of action) and negligent failure to warn (fourth cause of action) based on allegations the individual defendants knew of their propensity to engage in racial profiling and conduct unlawful detentions and arrests but failed to warn Roybal of the risk they posed or to take reasonable steps to prevent harm to him.

Roybal's complaint also contained two causes of action alleged against all defendants including the City. The complaint's fifth cause of action was for failure to train and supervise. It alleged the City had a duty to adopt and enforce policies against racial profiling and unlawful detentions and arrests and to adequately train its police officers and it failed to carry out those duties. The complaint's sixth cause of action alleged violation of Roybal's civil rights under 42 United States Code section 1983 (hereafter section 1983) and Civil Code sections 51, 51.7, and 52. It alleged the individual defendants violated Roybal's Fourth Amendment rights by improperly detaining and arresting him, engaging in racial profiling, and using excessive force. As to the City, the sixth cause of action embodied a section 1983 "*Monell*" (*Monell v. Dept. of Soc. Serv. Of City of N.Y.* (1978) 436 U.S. 658) claim alleging the City had established policies and procedures that caused the deprivation of Roybal's constitutional rights.

*Summary Judgment Motion*

The City and Vergara filed a motion for summary judgment, or in the alternative for summary adjudication, arguing the undisputed material facts compelled

3

judgment in their favor on all causes of action. The trial court agreed, granted the motion, and entered the judgment for the City and Vergara from which Roybal appeals.

On appeal, Roybal only discusses the civil rights cause of action against Vergara to the extent it was premised on allegations Roybal's detention and arrest were unlawful and therefore we limit our discussion of the undisputed facts to that claim and consider all other claims abandoned. (*Oviedo v. Windsor Twelve Properties, LLC* (2012) 212 Cal.App.4th 97, 108; *Bettencourt v. Hennessy Industries, Inc.* (2012) 205 Cal.App.4th 1103, 1109, fn. 5.)

*Moving Papers*

Vergara sought summary judgment on the civil rights cause of action on the grounds there were no disputed material facts as to his involvement in Roybal's detention and arrest and no evidence he violated Roybal's civil rights.

Vergara's declaration explained he was one of a number of officers working undercover in the Santa Ana neighborhood where Roybal was arrested. Vergara was in an unmarked car patrolling near an apartment building in a high crime area and known as a "Lopers" street gang hangout. The apartment complex had a semi-underground garage. Vergara pulled his car into the garage and parked. He heard talking and laughing from the other side of the garage. He got out of his car and moved closer to the sound staying out of view. As he got closer, he smelled burning marijuana and saw three men loitering near a silver car, holding what Vergara believed were marijuana pipes. Vergara "formed the opinion" the burning marijuana smell was coming from the three men. He radioed other officers and advised them of his observations. Other officers came into the garage and engaged the three suspects. Vergara had no further involvement other than performing perimeter security during the encounter. He did not participate in interviewing, detaining, searching, or arresting Roybal. He never came within five feet of Roybal during the encounter. Vergara declared his actions—i.e., radioing other officers about a possible crime taking place—were based solely on his

4

observations and were not due to Roybal's ethnicity. Vergara submitted documentary evidence showing Roybal was arrested for and charged with possession of marijuana for sale, and held to answer on the charges after his preliminary hearing.

*Opposition Papers*

Roybal's opposition was supported by his declaration and virtually identical declarations from the two other men who were with him the night he was arrested. Roybal declared he and the other men were simply socializing in the parking lot and they were not smoking marijuana. He denied the apartment building was in a high crime area. Roybal declared that all of a sudden he and his companions were surrounded by police officers (all of whom remained unnamed and unidentified in Roybal's declaration) with guns drawn. The officers yanked Roybal from his car, threw him against the wall, and then pushed him into a seated position. Roybal refused consent to search the trunk of his car, but officers searched anyway, finding Roybal's "medical marijuana" in the trunk. Roybal told the officers he had a medical marijuana card, but they denied him access to it. Roybal declared he was eventually found not guilty of any crime.

Roybal's attorney, Michael A. Lotta, submitted his declaration in opposition to the summary judgment motion, stating he was aware of other cases involving claims of violation of civil rights of young Hispanic males by Vergara and the City. He specifically referred to two cases in which he represented the plaintiff. In one, the plaintiff asserted claims of excessive force and civil rights violations in connection with his arrest by Vergara. In the other, the plaintiff lived in the same apartment complex where Roybal was arrested, and Vergara reported the plaintiff was affiliated with the Lopers gang, but the charges against that plaintiff were dismissed with the exception of driving on a suspended license.

*Ruling*

In its order granting the summary judgment motion, the trial court made the following findings concerning Roybal's sixth cause of action for violation of his civil rights: "The Court finds there are no triable issues of fact as to the . . . [sixth] cause[] of action. Vergara had no physical contact with [Roybal], he did not speak to [Roybal], and he did not arrest [Roybal]. [Vergara] did not touch [Roybal]. He did not point any guns at [Roybal], yank him from his car, or search his trunk. He did not deny [Roybal] access to his medical marijuana card. [Roybal] failed to raise a triable issue by presenting evidence that . . . Vergara fabricated any crimes by [Roybal], and that Vergara is not immune from liability under [Government Code section] 821.6."

DISCUSSION

*1. Standard of Review*

We review the judgment following the granting of a summary judgment motion de novo, and are "governed by [Code of Civil Procedure] section 437c, which provides in subdivision (c) that a motion for summary judgment may only be granted when, considering all of the evidence set forth in the papers and all inferences reasonably deducible therefrom, it has been demonstrated that there is no triable issue as to any material fact and the cause of action has no merit. The pleadings govern the issues to be addressed. [Citation.]" (*Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga* (2009) 175 Cal.App.4th 1306, 1331.) A defendant moving for summary judgment must demonstrate there is no triable issue of fact by "producing evidence that demonstrates that a cause of action has no merit because one or more of its elements cannot be established to the degree of proof that would be required at trial, or that there is a complete defense to it. Once that has been accomplished, the burden shifts to the plaintiff to show, by producing evidence of specific facts, that a triable issue of material fact exists as to the cause of action or the defense. [Citation.]" (*Ibid.*)

6

Although we review a grant of summary judgment de novo (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348), it is always the appellant's burden on appeal to demonstrate that the trial court erred. (*Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 649-650 (*Boyle*) ["party asserting trial court error may not . . . rest on the bare assertion of error but must present argument and legal authority on each point raised"].) We must view the evidence submitted in connection with a motion for summary judgment in a light most favorable to the party opposing the motion and resolve "any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 (*Saelzler*).)

*2. Material Issue of Fact on Civil Rights Claims*

We begin our de novo review by considering the relevant law with respect to a section 1983 claim. To prove a case under section 1983, a plaintiff must demonstrate that (1) the government's action occurred under color of state law, and (2) it resulted in the deprivation of a constitutional right or federal statutory right. (*Parratt v. Taylor* (1981) 451 U.S. 527, 535, overruled on other grounds by *Daniels v. Williams* (1986) 474 U.S. 327, 330.) "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983." (*Jones v. Williams* (9th Cir. 2002) 297 F.3d 930, 934 (*Jones*).) Personal participation can be found if a person was either personally involved in the violation of a right, or was an integral participant in the conduct giving rise to the violation. (*Macias v. County of Los Angeles* (2006) 144 Cal.App.4th 313, 323 (*Macias*).)

Officers are not integral participants simply by virtue of being present at the scene of an allegedly unlawful act. (*Jones*, *supra,* 297 F.3d at. p. 935.) For example, in *Torres v. City of Los Angeles* (9th Cir. 2008) 548 F.3d 1197, 1206, the Ninth Circuit found that an officer was not liable for an allegedly unlawful arrest as an integral participant because she was not present when plaintiff was arrested, did not instruct other

7

officers to arrest the plaintiff, and was not consulted before the arrest was made.  In *Blankenhorn v. City of Orange* (9th Cir. 2007) 485 F.3d 463, 481, at footnote 12, the court explained an officer who arrived at the scene after completion of the allegedly unlawful arrest and provided at most crowd control, was not an integral participant.  (But the officers who helped tackle the plaintiff to the ground, handcuffed him prior to the use of hobble restraints, and ordered the use of hobble restraints were active participants.)  (*Ibid.*)  In *Hopkins v. Bonvicino* (9th Cir. 2009) 573 F.3d 752, 770, the court concluded an officer who waited in the front yard interviewing a witness and did not participate in the allegedly unconstitutional search was not an integral participant.  In contrast, in *Boyd v. Benton County* (9th Cir. 2004) 374 F.3d 773, 780, officers who were "aware of the decision to use the flash-bang, did not object to it, and participated in the search operation knowing the flash-bang was to be deployed" were integral participants in the allegedly illegal search operation.

The trial court concluded Vergara had no physical contact with Roybal, he had no verbal contact with Roybal, and he did not participate in the Roybal's arrest.  These facts are undisputed, but this does not end the inquiry.  For an officer to be liable under section 1983, there must be a showing of personal participation in the alleged rights deprivation.  Personal participation can be found if a person was either personally involved in the violation of a right, or was an integral participant in the conduct giving rise to the violation.  (*Macias, supra,* 144 Cal.App.4th at p. 323.)  Vergara correctly asserted in his motion there were no disputed material facts as to his involvement in Roybal's detention and arrest.  His involvement was limited to furnishing information that focused other officers on the suspects.

The question presented then is whether a trier of fact could find that by furnishing information to other officers, Vergara played an integral part in the alleged violations.  Vergara did not offer any evidence regarding the responding officers' basis for the detentions or arrests.  If the evidence at trial demonstrates Vergara's information

8

was the sole basis for Roybal's detention and arrest, a trier of fact could reasonably find Vergara played an integral part in the alleged conduct. Evidence the responding officers independently formed their own reasonable suspicions and probable cause would likely lead to the conclusion Vergara's involvement was not integral to the alleged violations.

We must view the evidence submitted in a light most favorable to the party opposing the motion and resolve evidentiary doubts or ambiguities in plaintiff's favor. (*Saelzler, supra,* 25 Cal.4th at p. 768.) Based on the state of the evidence at the summary judgment motion, it cannot be said as a matter of law furnishing information that focused other officers on the suspects is insufficient to constitute integral participation. The significance of Vergara's involvement is dependent on factual determinations and must be determined in light of other evidence.

Roybal also suggests in passing he should be allowed to maintain a private cause of action against Vergara for violating Penal Code section 148.5 by making a false police report. Roybal's theory is that Vergara fabricated his observations (conveyed to the other officers who detained, searched, and arrested Roybal) that he smelled burning marijuana and possibly saw drug paraphernalia. Roybal relies on *Fenelon v. Superior Court* (1990) 223 Cal.App.3d 1476, which held a citizen's allegedly false report to police about suspect criminal activity could form the basis of a defamation suit. Roybal's complaint did not allege a defamation cause of action, nor was this argument raised below. Moreover, *Fenelon* is no longer good law. It was expressly rejected by our Supreme Court in *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 367-370, which held such communications, even if false, are absolutely privileged. And Roybal's argument completely ignores that Vergara is immune from suit based on any alleged inaccuracies or falsehoods in his reporting on his investigative activities. (See Gov. Code, § 821.6 provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of

9

his employment, even if he acts maliciously and without probable cause."].) Accordingly we need not address this point further.

DISPOSITION

The judgment is reversed as to Vergara only. In all other respects, the judgment is affirmed. On remand the trial court is directed to vacate the order granting summary judgment in favor of Vergara and enter a new and different order denying summary judgment and granting summary adjudication on the complaint's first five causes of action and denying summary adjudication on the complaint's sixth cause of action for violation of civil rights. Appellant is awarded his costs on appeal.


O'LEARY, P. J.

WE CONCUR:


ARONSON, J.


FYBEL, J.

10