Filed 3/28/22  Martin v. CFY Development CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| GAYNELL MARTIN, | C089604 |
| Plaintiff and Appellant, | (Super. Ct. No. STK-CV-UNPI-2017-0009458) |
| v. | |
| CFY DEVELOPMENT, INC., | |
| Defendant and Respondent. | |

Plaintiff Gaynell Martin was injured in a collision with a driver exiting the driveway of an apartment complex parking lot into an intersection.  Martin asserted a cause of action for premises liability against defendant CFY Development, Inc (CFY), the company that built the complex.  The trial court granted CFY's motion for summary judgment and denied Martin's request for leave to amend her complaint.

We will affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On September 7, 2017, Martin filed a form personal injury complaint against multiple defendants, including CFY. The complaint alleged motor vehicle and general negligence causes of action against Hector Rodriguez Rios, the driver of the car Martin collided with on July 2, 2016, and Janmill Cadriel, who owned the vehicle.

Martin alleged a premises liability cause of action against CFY, Manteca Atherton Associates, LLC, Manteca Atherton Associates, L.P. (collectively, the Manteca Atherton Entities), and the City of Manteca. Martin alleged that these defendants "owned, occupied, operated, controlled, supervised, leased, managed and maintained certain real property, located at the environs of and the intersection of Atherton Drive at Sereno Drive" in Manteca. Martin specifically alleged that (1) CFY and the Manteca Atherton Entities "negligently owned, maintained, managed and operated" the property, and (2) the City of Manteca "owned public property on which a dangerous condition existed . . . ."

An attachment to the premises liability claim form asserted that an absent stop sign contributed to the accident, alleging: (1) defendants "negligently, carelessly and recklessly conceived, drafted, designed, reviewed, approved, authorized, implemented, constructed, outfitted, monitored, inspected, repaired and oversaw the streets and roads and roadways leading to the intersection of Atherton Drive and Sereno Drive . . . including the placement and maintenance of . . . stop signs . . . so as to create a dangerous, defective and deadly condition of public property," (2) "the absence of a stop sign and/or limit line for the cross traffic driver, Hector Rios, who was intending to cross the 4-lane main artery of Atherton Drive (to southbound Sereno Drive)," combined with other conditions obstructing his view of Martin's oncoming motorcycle, caused the collision, and (3) the "intersection of Atherton Drive and Sereno Drive and the lanes and roadways leading thereto failed to have the necessary . . . signage . . . ."

On November 1, 2017, CFY filed an answer to the complaint.

On May 14, 2018, CFY filed a motion for summary judgment or, in the alternative, summary adjudication.

In support of the motion, CFY requested judicial notice, inter alia, of (1) certificates of occupancy issued on July 3, 2012, by the City of Manteca community development department for the Juniper Apartments buildings and clubhouse at 1201 E. Atherton Drive, and (2) a traffic report regarding the collision.[1]

CFY also submitted the declaration of Cyrus Youssefi, stating that: (1) Youssefi is the president and owner of CFY, (2) "CFY was retained by Manteca Atherton Associates, LP . . . for the purpose of constructing an apartment complex known as Juniper Apartments, located at 1201 E. Atherton Drive" in Manteca, attaching a standard construction contract between Manteca Atherton Associates, LP and CFY, (3) "CFY never owned, occupied, leased or controlled the apartment complex," (4) "[t]he apartment complex was to have a parking lot with two points of entrance/exit," and (5) "[t]he apartment complex was built according to the contract documents."

CFY argued that (1) Martin could not establish a premises liability claim because CFY did not own, occupy or control the Juniper Apartments, and (2) the "completed and accepted" doctrine was a complete defense to CFY's liability to third parties for negligence.

On February 19, 2019, Martin filed an opposition to CFY's motion. Martin opposed judicial notice (and also objected to admission) of the certificates of occupancy

---

[1] "When a building is constructed, added on to, or altered, a certificate of occupancy is generated at the conclusion of all inspections to certify that the building meets local building code requirements for occupancy." (*Burien, LLC v. Wiley* (2014) 230 Cal.App.4th 1039, 1047; 7 Miller & Starr, California Real Estate (4th ed. 2021) § 25:40 ["a certificate of occupancy is required before the building or structure . . . can be used or occupied"].)

and traffic collision report and objected to Youssefi's declaration in its entirety, including the attached construction contract.

Martin also submitted the following evidence: (1) the declaration of an expert stating that Sereno Drive exiting the Juniper Apartments was designed to have a stop sign in both the northbound and southbound directions at Atherton Drive, but because Sereno Drive was not completed as planned, there was only a stop sign for the northbound direction and no stop signs on Atherton Drive at this intersection, creating an "uncontrolled intersection," (2) plans produced by CFY and the Manteca Atherton Entities showing a stop sign at the west and east exits of the Juniper Apartments, and (3) accident site photographs.[2]

The remaining evidence Martin offered consisted of the Manteca Atherton Entities' responses to requests for admission and interrogatories that (1) the site plans approved by the city included a stop sign at the exit from the Juniper Apartments at the intersection of Atherton Drive and Sereno Drive, (2) there was no stop sign at this exit on July 2, 2016, (3) the Manteca Atherton Entities installed a stop sign at the east exit of the Juniper Apartments, (4) the Manteca city engineer erected and maintained a stop sign at only one of the two exits from the Juniper Apartments, (5) the Manteca Atherton Entities did not know why the stop sign was not in place at the Atherton Drive-Sereno Drive intersection at the time of the accident, (6) the Manteca Atherton Entities were unaware the stop sign was not there, (7) the Manteca Atherton Entities had a duty of care to make

---

[2]     Martin provided a declaration describing what was shown in the photographs, but the copies in the record are very dark—in fact, mostly black—and do "not provide a clear picture of anything." (*McBride v. Smith* (2018) 18 Cal.App.5th 1160, 1171, fn. 4.) Martin's opening brief incorporates a very clear overhead photograph of the intersection with labeled arrows indicating the direction of the vehicles and illustrations of the vehicles at the point of collision. This photograph is not in the record. "We do not consider evidence that is not in the record in reviewing a motion for summary judgment." (*Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582, 599.)

the driveway exiting from the Juniper Apartments at the intersection of Atherton Drive and Sereno Drive safe for persons using it and for persons traveling on the adjacent road, and (8) whether a stop sign should be installed at a particular location is beyond the knowledge of an average person.[3]

Martin's argument in opposition to CFY's motion mirrors the contentions raised on appeal, which we will discuss below and need not repeat here.

On March 6, 2019, the trial court conducted a hearing on the motion. Counsel for Martin argued that the court's tentative ruling granting summary judgment for CFY "appears to be based on probably imperfect or imprecise pleading. C.F.Y is indicating that they should not be in the case because they had no ownership interest, and, thus, didn't qualify under any of the rules relating to premises liability." Counsel argued, however, that the complaint "has language that goes beyond basing a cause of action simply on control and ownership and talks about general negligence in connection with construction and failed construction and placement of the stop sign . . . ." If the court's ruling "is based primarily on this imperfect cause of action," counsel maintained the court should "allow an amendment to be made to the complaint to state the proper cause of action here, which could be just simply contractor negligence for a defect that has caused a foreseeable injury."

Counsel for CFY responded that amendment should only be allowed where a viable cause of action could be stated against the parties, and "[e]ven if there was a claim for negligence, there's a bar to the cause of action under the completed and accepted doctrine . . . ."

---

[3] Under the Civil Discovery Act (Code. Civ. Proc., § 2016 et seq.), responses by the Manteca Atherton Entities to requests for admission and interrogatories were not admissible against CFY. (Code Civ. Proc., §§ 2030.410, 2033.410, subd. (b).) However, CFY did not object to this evidence.

5

The trial court denied Martin's request for leave to amend the complaint, observing that it had allowed late amendment in another case but "I don't think it's going to make any difference in this particular case" for the reasons offered by counsel for CFY. The court affirmed the tentative ruling granting summary judgment for CFY.

On March 19, 2019, the court issued a written order: (1) granting judicial notice of the certificates of occupancy but denying judicial notice of the traffic collision report; (2) overruling Martin's objections to the certificates of occupancy, Youssefi's declaration, and the construction contract, and sustaining the objection to the traffic collision report; (3) granting summary judgment on the claim for premises liability against CFY; and (4) denying Martin's request for leave to amend the complaint "because allowing an amendment would not change the ultimate outcome of the ruling." The court ordered the complaint against CFY dismissed with prejudice and awarded CFY costs.

On May 28, 2019, Martin filed a notice of appeal.

### DISCUSSION

## I. TIMELINESS

As an initial matter, we reject CFY's contention that Martin's appeal must be dismissed because the notice of appeal was not timely filed. CFY notes that the notice of entry of the court's order granting summary judgment and dismissing the complaint was served on CFY on March 27, 2019, and Martin filed a notice of appeal on May 28, 2019. The applicable filing deadline was 60 days after Martin was served with notice of entry. (Cal. Rules of Court, rule 8.104(a)(1)(B).) The notice was served by mail. Service by mail was complete at the time notice was mailed. (Code Civ. Proc., § 1013, subd. (a) [extension of time after service by mail does not apply to notice of appeal].) Martin's notice of appeal was filed 61 days after service of the notice of entry of order.

As Martin points out, the sixtieth day fell on Sunday, May 26, 2019. We take judicial notice of the fact that the next day, Monday, May 27, 2019, was Memorial Day, a

6

legal holiday. (Evid. Code, § 452, subd. (h).) By application of the "holiday" rule, any act due on Memorial Day may be timely performed on the next day that is not a holiday, which was Tuesday, May 28, 2019. (Code Civ. Proc., § 12a, subd. (a).) Therefore, the notice of appeal was timely filed. (See *Shufelt v. Hall* (2008) 163 Cal.App.4th 1020, 1022, fn. 2.)

## II. STANDARD OF REVIEW

"The standard of review for summary judgment is well established. The motion 'shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.] A moving defendant has met his [or her] burden of showing that a cause of action has no merit by establishing that one or more elements of a cause of action cannot be established or that there is a complete defense." (*Lackner v. North* (2006) 135 Cal.App.4th 1188, 1196 (*Lackner*); Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)

"We independently review an order granting summary judgment, viewing the evidence in the light most favorable to the nonmoving party. [Citations.]" (*Lackner, supra*, 135 Cal.App.4th at p. 1196; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 (*Saelzler*).) "In performing our independent review of the evidence, 'we apply the same three-step analysis as the trial court. First, we identify the issues framed by the pleadings. Next, we determine whether the moving party has established facts justifying judgment in its favor. Finally, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable, material fact issue.' [Citation.]" (*Lackner*, at p. 1196.)

"In determining whether there is a triable issue of material fact, we consider all the evidence set forth by the parties except that to which objections have been made and properly sustained. [Citations.]" (*Lackner, supra*, 135 Cal.App.4th at p. 1196; Code Civ. Proc., § 437c, subd. (c).) "We accept as true the facts supported by plaintiff's evidence

7

and the reasonable inferences therefrom [citation], resolving evidentiary doubts or ambiguities in plaintiff's favor." (*Lackner*, at p. 1196; *Saelzler, supra*, 25 Cal.4th at p. 768.)

Although review of summary judgment itself is de novo, "an appellate court reviews a court's final rulings on evidentiary objections by applying an abuse of discretion standard." (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694 (*Carnes*); *Ortiz v. Dameron Hospital Assn.* (2019) 37 Cal.App.5th 568, 584; *Michaels v. Greenberg Traurig, LLP* (2021) 62 Cal.App.5th 512, 521.)

## III. LIBERAL CONSTRUCTION OF PLEADINGS

Martin contends that the complaint, "liberally construed, goes beyond stating a cause of action solely for premises liability and includes negligent construction causing the Appellant's injuries." We agree.

The general rule is that the allegations of a pleading "must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) In *Gomez v. Lincare, Inc.* (2009) 173 Cal.App.4th 508, the court said that this rule was applicable to demurrer or motion for judgment on the pleadings but irrelevant to summary judgment, which is based on evidence. (*Id.* at p. 522.) However, courts have applied the rule of liberal construction to a defendant's motion for summary judgment, which " 'necessarily includes a test of the sufficiency of the complaint.' " (*American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1117; see also *Navarrete v. Meyer* (2015) 237 Cal.App.4th 1276, 1283; *Prue v. Brady Co./San Diego, Inc.* (2015) 242 Cal.App.4th 1367, 1376.) Out task is to determine whether " ' " 'the facts alleged provide the basis for a cause of action under any theory' " ' " and "[w]e ignore erroneous

or confusing labels in the pleading and look to its gravamen to determine what cause of action is stated." (*Navarrete*, at p. 1283.)[4]

Our review of the facts Martin alleged in the cause of action for premises liability, liberally construed, provide a basis for a claim of negligent construction against CFY. Martin alleged that the defendants named in the cause of action labeled premises liability, including CFY (1) "negligently . . . constructed . . . the streets and roads and roadways" leading to the accident site "including the placement and maintenance of . . . stop signs," (2) "the absence of a stop sign and/or limit line for the cross traffic driver, Hector Rios, who was intending to cross the 4-lane main artery of Atherton Drive (to southbound Sereno Drive)" contributed to the collision, and (3) the "intersection of Atherton Drive and Sereno Drive and the lanes and roadways leading thereto failed to have the necessary . . . signage . . . [and] limit lines" posing a foreseeable risk of serious injury. These allegations were sufficient to state a claim of negligent construction against CFY. (See *Blair v. Superior Court* (1990) 218 Cal.App.3d 221, 226 [negligent construction charge may encompass "inadequate warning signs"].)[5]

---

[4] To be sure, a plaintiff who seeks to oppose summary judgment on a theory not raised by the facts alleged in the complaint must seek leave to amend the complaint, as Martin sought to do. (*Lackner, supra*, 135 Cal.App.4th at p. 1201, fn. 5.)

[5] In moving for summary judgment, CFY tacitly acknowledged that Martin had pled a claim for negligent construction. CFY's memorandum of law in support of the motion argued that the completed and accepted doctrine was a complete defense to a negligence claim by Martin. The conclusion of CFY's memorandum did not mention premises liability but instead stated in its entirety that "CFY Construction Company has affirmatively shown that it has a complete defense to CFY [*sic*], therefore, respectfully prays that this Court enter judgment for CFY."

## IV. EVIDENTIARY OBJECTIONS

Martin contends on appeal that the trial court erred in overruling three of her objections to CFY's evidence. We conclude the court did not abuse its discretion. (*Carnes, supra*, 126 Cal.App.4th at p. 694.)

First, Martin maintains the trial court erroneously overruled her objection to Youssefi's declaration based on Code of Civil Procedure section 437c, subdivision (e).[6] Under this section, "the court has discretion to deny summary judgment if the moving party has such *control* of critical evidence that the opposing party is *unable* to file controverting declarations." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2021) ¶ 10:319.) "This power is limited to cases where the moving party's declarations are from a *sole witness* to a fact or reflect the declarant's *state of mind.*" (*Ibid.*) "The opposing party cannot reasonably be expected to controvert declarations as to facts exclusively within the moving party's knowledge or control." (*Id.*, ¶ 10:321.) "But the decision is discretionary, not mandatory." (*Id.*, ¶ 10:322.) Even where the declarant is the sole witness to a fact or testifies to his or her state of mind, the court retains jurisdiction to grant the motion based on the declaration. (*Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408, 417; *Butcher v. Gay* (1994) 29 Cal.App.4th 388, 404-405.)

The court ruled that "nothing in Mr. Youssefi's declaration indicates he is the sole witness to a material fact or that his statements of material fact pertain to his state of

---

**6** Code of Civil Procedure section 437c, subdivision (e), provides: "If a party is otherwise entitled to summary judgment pursuant to this section, summary judgment shall not be denied on grounds of credibility or for want of cross-examination of witnesses furnishing affidavits or declarations in support of the summary judgment, except that summary judgment may be denied in the discretion of the court if the only proof of a material fact offered in support of the summary judgment is an affidavit or declaration made by an individual who was the sole witness to that fact; or if a material fact is an individual's state of mind, or lack thereof, and that fact is sought to be established solely by the individual's affirmation thereof."

mind," noting that the Manteca Atherton Entities could provide corroborating declarations and the declaration did not involve Youssefi's mental condition or capacity or his reasons or motives. We agree. Youssefi declared that CFY built the complex per contract, never owned the complex, the parking lot was to have two exits, and it was built according to the contract. This is not evidence of his state of mind but rather facts within his knowledge. Moreover, Youssefi "was not the sole witness to the pertinent facts involved, even though he may have been the only witness who testified as to those facts." (*O'Neil v. Dake* (1985) 169 Cal.App.3d 1038, 1045, fn. 3.)

Second, Martin contends that Youssefi's declaration "does not competently set forth the declarant's personal knowledge *or* observation *or* presence *or* receipt of any information and/or any documents concerning the matters testified to in his declaration." The trial court overruled the objection reasoning that Youssefi "indicated [in] his declaration that he would testify competently based on his personal knowledge as president and owner of CFY." Code of Civil Procedure section 437c, subdivision (d), requires a declaration in support of summary judgment to "show affirmatively that the affiant is competent to testify to the matters stated" in the declaration. It is not enough to merely state that a declaration is made on personal knowledge and the declarant is competent to declare to the facts therein. (*Roy Brothers Drilling Co. v. Jones* (1981) 123 Cal.App.3d 175, 181-182 ["The requirement of this section is not that the declarant recite the conclusion that he can competently testify but that he allege facts showing his competence"].)

However, it was not an abuse of discretion for the court to accept at face value that the president of CFY would know that the company had never owned the Juniper Apartments and the complex was built according to the contract attached to the declaration. Moreover, there was no dispute that the Juniper Apartments were designed to have two entrance/exits, which are facts evidenced by plans produced by CFY and the Manteca Atherton Entities that Martin submitted in opposition to CFY's motion.

11

Third, Martin maintains that the court should have excluded the construction contract attached to Youssefi's declaration as inadmissible hearsay (Evid. Code, § 1200) for which no exception was shown (i.e., the business records exception, Evid. Code, § 1271), as well as "for lack of foundation, authentication and violation of the secondary evidence rule." The trial court overruled the objection, noting that Martin failed to establish that Youssefi lacked personal knowledge and competence to authenticate the construction contract, confining the objection to merely citing some Evidence Code provisions and omitting others (a practice that Martin continues in her opening brief). We will not consider conclusory arguments unsupported by legal analysis. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277; *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153.)

Further, the court observed that Martin herself "relies on provisions contained in the construction contract in the argument portion of her opposition brief wherein she asserts that the 'completed and accepted' doctrine does not apply to relieve CFY from liability." Martin argued in opposition to CFY's motion that the construction contract required a multistep process before "acceptance" by the property owner, citing specific provisions of the contract and asserting there was no evidence that these contractual criteria were met. Martin continues to make this argument in her opening brief on appeal. For this reason, Martin waived objection to the construction contract. (9 Witkin, Cal. Procedure (5th ed. 2022) Appeal, § 417 ["If the respondent's evidence is admitted over the appellant's objection, and the appellant than offers and makes use of the same evidence, he or she waives the prior objection"]; see also *Heiman v. Market Street Railway Co.* (1937) 21 Cal.App.2d 311, 315; *Romeo v. Jumbo Market* (1967) 247 Cal.App.2d 817, 823.) The court did not abuse its discretion in overruling this objection.

12

## V.     COMPLETED AND ACCEPTED DOCTRINE

Martin contends that there was no showing that the "completed and accepted" doctrine applied to her claims against CFY.

Under the doctrine, "when a contractor completes work that is accepted by the owner, the contractor is not liable to third parties injured as a result of the condition of the work, even if the contractor was negligent in performing the contract, unless the defect in the work was latent or concealed.  [Citation.]  The rationale for this doctrine is that an owner has a duty to inspect the work and ascertain its safety, and thus the owner's acceptance of the work shifts liability for its safety to the owner, provided that a reasonable inspection would disclose the defect.  [Citation.]" (*Jones v. P.S. Development Co., Inc.* (2008) 166 Cal.App.4th 707, 712 (*Jones*), disapproved on another ground in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 532, fn. 7; *Neiman v. Leo A. Daly Co.* (2012) 210 Cal.App.4th 962, 969 (*Neiman*); see also *Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1466-1471 (*Sanchez*).)

Martin contends there was no showing that Juniper Apartments were "completed" because Youssefi's declaration did not mention completion, and the certificates of occupancy were not judicially noticeable, were silent on completion, were not provided for all buildings in the complex, and were also silent on "whether there has been the completion and readiness and code compliance of the parking lot, requiring two exits—where one exit violated the city-approved plans by the omission of the city-approved a stop sign."

This argument fails on all fronts.  First, certificates of occupancy are judicially noticeable.  (See *Stockton Citizens for Sensible Planning v. City of Stockton* (2012) 210 Cal.App.4th 1484, 1488 & fn. 3 [taking judicial notice of city's community development director's letter to developer stating that developer's cite plan was in substantial conformance with master plan]; see also *Washington v. County of Contra Costa* (1995) 38 Cal.App.4th 890, 897, 901 [judicial notice of county inspection report].)

13

Second, issuance of the certificates established that the apartment complex was completed per contract. The contract provided that construction work was to commence no later than April 1, 2011, and must be completed by September 30, 2012, as "verified by Temporary Certificate of Occupancy or Certificate of Occupancy."

Third, in *Neiman*, the court rejected a similar contention that a project was not completed because the portion of the project blamed for the accident was not completed—in that instance, contrasting marking stripes specified in the plans for the steps where the plaintiff fell. (*Neiman, supra*, 210 Cal.App.4th at p. 970.) The court said the "fact that the project did not comply with the plans and specifications . . . does not mean the project was not completed." (*Ibid.*) The project, a theater, had been opened to the public and the defendant was no longer providing services. (*Ibid.*) In this instance, as of 2012—four years before the accident—the Juniper Apartments were certified for public occupancy and CFY completed its services under the terms of the contract. This evidence established that CFY's work was "completed" within the meaning of the doctrine.

Martin next asserts that there was no evidence that the Juniper Apartments were "accepted" by the owners, the Manteca Atherton Entities, noting that Youssefi's declaration did not mention acceptance. "Completion and acceptance look to the practical realities of the work defined by the contract and the interaction of owner and contractor or subcontractor." (Schwing, 2 Cal. Affirmative Defenses (2d ed. 2021) § 48:30.) "[T]he fact that the owner had asserted control over the premises and the subject of the contract may signal acceptance following the contractor's performance." (*Id.*, § 48:30 & fn. 7; *Klingenstein v. Miehle Printing Press & Mfg. Co.* (1919) 41 Cal.App.352, 355-356.)

Martin alleged in her premises liability cause of action that the Manteca Atherton Entities "negligently owned, maintained, managed and operated" the property located at the intersection of Atherton Drive and Sereno Drive, i.e., the Juniper Apartments. These

14

allegations constituted judicial admissions by Martin that the Manteca Atherton Entities asserted control of the Juniper Apartments thus signaling their acceptance of CFY's work. (See 6 Witkin, Cal. Procedure (5th ed. 2022) Proceedings Without Trial, § 274 ["Neither party may rely on his or her own pleadings as a factual source on a motion for summary judgment. [Citation.] Either, however, may rely on the other's pleadings, the allegations of which are judicial admissions"]; see also *Castillo v. Barrera* (2007) 146 Cal.App.4th 1317, 1324; *Mark Tanner Construction, Inc. v. Hub Internat. Ins. Services, Inc.* (2014) 224 Cal.App.4th 574, 586-587.)

Martin further contends that the provisions of the construction contract refute "acceptance." Martin asserts that "according to the construction contract, '*acceptance*' requires a multistep process," the fulfillment of which was not discussed in Youssefi's declaration or shown by other evidence. However, Martin provides no explanation how CFY's failure to show, for example, that the Manteca Atherton Entities made progress payments to CFY during construction in compliance with a term of the contract refutes acceptance of CFY's work on the Juniper Apartments for purposes of the completed and accepted doctrine. To the contrary, one contractual provision Martin refers to is section No. 9.8.5 of the contract regarding the certificate of substantial completion of work (which Martin refers to as "Certificate of substantial compliance"). Section No. 9.8.1 of the contract defines "Substantial Completion [as] the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so that the Owner can occupy or utilize the Work for its intended use." The issuance of certificates of occupancy and Martin's judicial admissions that the Manteca Atherton Entities "managed and operated" the Juniper Apartments establish that CFY's work was substantially completed under the terms of the contract and the Manteca Atherton Entities asserted control thereafter, signaling acceptance by the owner. (Schwing, 2 Cal. Affirmative Defenses, *supra*, § 48:30.)

15

In a related argument, Martin contends that provisions of the contract indicate that the Manteca Atherton Entities can "run" the Juniper Apartments without acceptance. For example, section No. 9.6.6 of the contract regarding progress payments states: "A Certificate for Payment, a progress payment, or partial or entire use or occupancy of the Project by the Owner shall not constitute acceptance of Work not in accordance with the Contract Documents." Martin argues that since the stop sign at the western exit of the apartment complex shown in the site plans was not installed, "CFY's failure to complete the project in accordance with the Contract Documents . . . prevents Manteca Atherton from being deemed to have '*accepted*' the project as complete." As discussed, in *Neiman*, *supra*, 210 Cal.App.4th 962, the court rejected this argument regarding the "completed" aspect of the doctrine and it fares no better for "acceptance," i.e., if the failure to install an item called for in the plans does not mean that construction is not complete, neither does it mean that the owner has not accepted a project that, as here, it opened to the public and utilized.

Martin's final argument against application of the doctrine is that summary judgment was improper because there was a factual question whether the absence of a stop sign was a patent or latent defect. The completed and accepted doctrine "applies to patent defects, but not latent defects." (*Neiman, supra*, 210 Cal.App.4th at p. 969.) A patent defect, as defined in Code of Civil Procedure section 337.1, subdivision (e), "means a deficiency which is apparent by reasonable inspection." (Code Civ. Proc., § 337.1, subd. (e).) A patent defect " ' " 'is one which can be discovered by such an inspection as would be made in the exercise of ordinary care and prudence. [Citations.] This is contrasted with a latent defect, one which is hidden and which would not be discovered by a reasonably careful inspection. [Citations.]' " ' " (*Mills v. Forestex Co.* (2003) 108 Cal.App.4th 625, 644.) Patency refers to the patency of danger, not just exterior visibility. (*Sanchez, supra*, 47 Cal.App.4th at p. 1470.) A danger is "patent as a matter of law" where "it would be discovered by the inspection an owner would make in

16

the exercise of ordinary care and prudence." (*Id.* at pp. 1470-1471; *Neiman, supra*, 210 Cal.App.4th at p. 970.)

Martin relies on the responses of the Manteca Atherton Entities to requests for admission in which they admit that "[w]hether a stop sign should be installed in a particular location is beyond the knowledge of an average person." This is insufficient to raise a triable issue of fact. The patency inquiry focuses on discovery by the *owner* of the property in conducting a reasonably careful inspection. In this case, an owner conducting such an inspection would discover the danger posed by the absence of a stop sign or limit line at the exit of the parking lot driveway that gave directly onto an intersection with a four-lane road that did not have stop signs at that intersection. Indeed, the danger was obvious. In addition, the Manteca Atherton Entities produced plans in discovery calling for stop signs at the east and west exits from the complex to Atherton Drive. A reasonable inspection would have disclosed that the stop sign called for in the plans was present at the east exit but missing from the west exit. The defect was thus patent as a matter of law because it would be discovered by an owner "in ensuring that obvious safety measures called for in the plans and specifications were completed." (*Neiman, supra*, 210 Cal.App.4th at p. 970.)

## VI.   PREMISES LIABILITY

Martin maintains that Youssefi's declaration that "CFY never owned, occupied, leased or controlled" the Juniper Apartments property was belied by terms of the contract that CFY would provide the owner access to the site during construction, which, under the contract, was to begin on February 11, 2011, and ended when the certificates of occupancy were issued upon completion on July 3, 2012. Based on this evidence Martin argues CFY possessed and controlled the property for one and a half years.

However, this same evidence established that CFY was not in possession and control of the property at the time of Martin's accident. Accordingly, the court properly granted summary judgment on a premises liability claim in favor of CFY, which was no

17

longer in control of the subject property when Martin was injured.  (*Preston v. Goldman* (1986) 42 Cal.3d 108, 110, 119; *Lorenzen-Hughes v. MacElhenny, Levy & Co.* (1994) 24 Cal.App.4th 1684, 1688; *Lewis v. Chevron U.S.A., Inc.* (2004) 119 Cal.App.4th 690, 692.)

Martin further contends that her premises liability cause of action included allegations that went beyond occupying and controlling the premises to state "a cause of action for general negligence for CFY's negligent '*implementing, constructing and outfitting*' the Juniper Apartments, exposing CFY to continuing liability to Martin."  We have already determined that, liberally construed, Martin's cause of action for premises liability included allegations sufficient to state a claim against CFY for negligent construction.  But we also determined that claim was barred by the completed and accepted doctrine.  Accordingly, CFY's control over the Juniper Apartments property during construction, which it is undisputed ended four years before Martin's injury accident, cannot furnish a basis for claim against CFY that survives summary judgment.

## VII.   *BIAKANJA* AND *BEACON*

Martin argues that CFY is liable for negligence under *Biakanja v. Irving* (1958) 49 Cal.2d 647 (*Biakanja*), and *Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP* (2014) 59 Cal.4th 568 (*Beacon*), regardless of the completed and accepted doctrine.

In *Biakanja*, the California Supreme Court articulated a multifactor test for determining whether a defendant had a duty of due care to protect a plaintiff from injury and was liable for damage caused by the defendant's negligence even though they were not in privity of contract.  (*Biakanja, supra*, 49 Cal.2d at pp. 648, 650.)  The court held: "The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury,

18

the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, and the policy of preventing future harm." (*Id.* at p. 650*.*)

In *Beacon*, the court held "that an architect owes a duty of care to future homeowners where the architect is a *principal architect* on the project—that is, the architect, in providing professional design services, is not subordinate to any other design professional—even if the architect does not actually build the project or exercise ultimate control over construction decisions." (*Beacon, supra*, 59 Cal.4th at p. 581.) In assessing whether the allegations of complaint were sufficient, if proven, to establish a duty of care to future homeowners, the court in *Beacon* relied on *Biakanja* factors. (*Id.* at pp. 581, 585-586.)

However, in *Jones*, the court observed that cases applying *Biakanja* factors to contractors where the completed and accepted doctrine applies have addressed a "duty of care to owners who lacked a reasonable opportunity to cure a construction defect before it caused their damages," which is another way of saying the defect was latent and the completed and accepted doctrine did not apply. (*Jones, supra*, 166 Cal.App.4th at pp. 715-716; see also Schwing, 2 Cal. Affirmative Defenses, *supra*, § 48:30 ["The [completed and accepted] doctrine will not assist a subcontractor sued by owners who lacked a reasonable opportunity to discover or cure a construction defect before it caused their damages. In these circumstances, the multi-factored test stated in Biakanja v. Irving governs," (fn. omitted)].) Thus, *Biakanja* does not abrogate or displace the completed and accepted doctrine. (*Jones*, at pp. 715-716.)

Moreover, Martin claims that application of *Biakanja* factors weighs in favor of liability on the part of CFY. The court in *Sanchez* came to the opposite conclusion where the defect was patent. Applying *Biakanja* factors, the court found that some factors— intention to benefit a person like the plaintiff, foreseeability of harm, and certainty of the plaintiff's injury—weighed in the plaintiff's favor, "but do not in themselves establish a

19

duty." (*Sanchez, supra*, 47 Cal.App.4th at p. 1471.) Rather, given that the defect was patent, there was "no longer . . . a close connection between defendant's conduct and plaintiff's injury," and, since "the structure could have been rejected or the defect corrected by the owner, the policy against preventing future harm is not served by imposing liability on the contractor." (*Id.* at p. 1471-1472.)

Regarding *Beacon*, Martin does not argue that this decision created a general rule, applicable outside of the context of a principal architect or other "design professional." In this instance, there was a design professional on the project: Kuchman Architects. Nor does Martin cite any case applying *Beacon* to a general contractor like CFY, which was not a design professional and could assert the completed and accepted doctrine as a defense to a third party negligence claim. We conclude that *Beacon* does not alter or abandon the line of authority under which a general contractor, whose construction has been completed and accepted by the property owner, may assert the doctrine as a complete defense to a third party negligence claim.

## DISPOSITION

The order granting summary judgment and dismissing the complaint against CFY is affirmed. CFY shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (2).)

/s/
RAYE, P. J.

We concur:

/s/
HULL, J.

/s/
RENNER, J.

20